[Civ. No. 4366. Third Appellate District.—October 23, 1931.]

AMELIA P. BOOTHBY, Respondent, v. TOWN OF YREKA CITY (a Municipal Corporation), Appellant.

Charles E. Johnson, District Attorney, and Allen & McNamara for Appellant.

Jesse W. Carter for Respondent.

PLUMMER, J.—Plaintiff had judgment in this action against both the Town of Yreka City and County of Siskiyou, from which judgment the Town of Yreka City appeals.

The record shows that for some time prior to the sixth day of November, 1928, the appellant had maintained a certain building within the corporate limits of the City of Yreka, known as "Engine House No. 2". This building was situate within voting precinct No. 5 of the county of Siskiyou. The plaintiff in this action was a duly qualified voter of the County of Siskiyou, residing within voting precinct No. 5. Prior to the sixth day of November, 1928, notice was regularly given by the County of Siskiyou, notifying all persons residing within district No. 5 that their polling place would be in the upstairs of engine-house No. 2.

Engine-house No. 2 is a two-story building, and was on the sixth day of November, 1928, owned by, and for a long time prior thereto had been owned and maintained by the appellant. The lower part of the building was used by the city fire department, where paraphernalia of the department was housed. The upstairs was used by the fire department, and its monthly meetings were held there. The chief of the fire department was entrusted by the city with the supervi-

sion and control of engine-house No. 2. The upstairs portion of engine-house No. 2 was kept locked when not in use. The chief and assistant chief of the fire department had access to the key opening a door to the stairway leading to the upstairs room of the engine-house. The room upstairs had often been used for election purposes and occasionally for other purposes. Prior to the election held on November 6, 1928, Miles Evan Buckner, a supervisor of the Third District of Siskiyou County, which district included the Town of Yreka City, assisted in the selection of engine-house No. 2 as a polling-place where the voters of precinct No. 5 of said county might be enabled to vote. Mr. Buckner, in securing the upstairs portion of engine-house No. 2 as a polling-place, asked one of the members of the board of trustees of the city for permission to use the same, and was directed to take the matter up with the chief of the fire department. The chief, on behalf of the city, granted permission to the County of Siskiyou to use the upstairs portion of engine-house No. 2 as a polling-place for the election to be held on November 6, 1928. Buckner proceeded to make arrangements with the superintendent of streets of the appellant to construct election booths in the upstairs of said building, the county paying for the installation of the booths. These booths were installed prior to the primary election held in August, 1928, and were left there until after the general election held in said county in November, 1928.

On the sixth day of November, 1928, the plaintiff in this action, being a resident of precinct No. 5, went to the upstairs room of engine-house No. 2 and cast her ballot. After casting her ballot plaintiff started to descend the stairs leading from the polls to the street below. The day was dark and the hallway was poorly lighted. There were three steps with the nosing or furling broken off completely, and a nail was protruding from one of the steps. The plaintiff caught the heel of her shoe on the projecting nail, and, due to the condition of the steps and lack of a hand-rail, was thrown down the stairs to the landing below. As a result of the fall the plaintiff was injured and brought this action for damages. The damages awarded are not alleged to be excessive.

Upon this appeal it is insisted that the County of Siskiyou was either a mere licensee or a trespasser upon the

property belonging to the appellant, and that the plaintiff, entering the premises not on the invitation of the city, and not in any manner connected with the city's affairs, stands in the shoes of the County of Siskiyou in so far as her right of action is concerned; that she was no more than a mere trespasser or licensee, and cannot recover in the absence of any showing of active negligence or wanton injury on the part of the city.

The record shows that the County of Siskiyou had for a long time prior to the sixth day of November, 1928, used the premises involved as a polling-place, which, taken in connection with the evidence to which we have referred, shows, we think, very clearly that the upstairs room of engine-house No. 2 was used by the County of Siskiyou with the knowledge and consent of the Town of Yreka City, and that the conclusion is amply justified that the County of Siskiyou was, on the sixth day of November, 1928, occupying and using the upstairs room of engine-house No. 2 as a tenant of the appellant city. Whether that tenancy was or was not for compensation is wholly immaterial. Furthermore, being there with the knowledge and consent of the city, so far as plaintiff is concerned we think it is immaterial whether permission was regularly given to the County of Siskiyou to occupy said premises and use the same for a polling-place by resolution adopted by the trustees of the appellant city. Not being a trespasser, as is shown by the evidence to which we have referred, the exact procedure by which the County of Siskiyou secured permission to occupy the upstairs portion of engine-house No. 2 cannot in anywise prejudice the rights of the plaintiff, she being a third party and not at all interested in how the County of Siskiyou obtained the right or permission to establish a place for voters to cast their ballots in voting precinct No. 5.

No argument is really made that the stairway to which we have alluded was not, on the sixth day of November, 1928, in a dangerous condition, and for a long time prior to such date had been in such dangerous condition. Neither is any argument made that the appellant did not have knowledge of such dangerous condition, and had neglected for a long period of time to make repairs. However, we may cite the extended notes found in 25 A. L. R., page 1295, showing that the length of time elapsing during which

the stairway involved was allowed to remain in a dangerous condition was sufficient to charge the city with constructive knowledge. The cases are numerous, and we cite only the page of the volume in which they are collected. Section 2 of the act approved June 13, 1923, Stats. 1923, page 675, Deering's General Laws of California, page 2310, reads:

"Counties, municipalities and school districts shall be liable for injuries to persons and property resulting from the dangerous or defective condition of public streets, highways, buildings, grounds, works and property in all cases where the governing or managing board of such county, municipality, school district or other board, officer or person having authority to remedy such condition had knowledge or notice of the defective or dangerous condition of any such street, highway, building, grounds, works or property and failed or neglected, for a reasonable time after acquiring such knowledge or receiving such notice, to remedy such condition, or failed and neglected for a reasonable time after acquiring such knowledge or receiving such notice to take such action as may be reasonably necessary to protect the public against such dangerous or defective condition."

It will be observed that this section refers to buildings, and requires the municipality owning the same to take such action as will protect the public against any dangerous or defective condition. This is an obligation resting upon the city as the owner of a building used, or which may be used by the public with its permission or consent, to the same extent at least as that burden is borne by the owner of private property to which the public has access or to the use of which the public may be invited. ■ The city, as the owner of said property used by the County of Siskiyou, was chargeable with notice of the purpose for which it was being used, by reason of the fact that permission was asked to use the property for a certain public purpose, and had on a number of times previously used the premises for a like public purpose. Being chargeable with knowledge of the purpose of the intended use, and use of the premises by the County of Siskiyou, it was likewise chargeable with notice of the fact that all of the voters residing within precinct No. 5 would be notified to use the premises as a polling-place on November 6, 1928.

In this particular respondent calls our attention to the case of *Chafor* v. *Long Beach City*, 174 Cal. 478 [Ann. Cas. 1918D, 106, L. R. A. 1917E, 685, 163 Pac. 670], and quotes therefrom the following language: ''It cannot be said, then, that Edith Chafor was a trespasser at the time and place of her death; she was at least a licensee by permission or invitation, and if the city is responsible at all, it is responsible for the exercise of ordinary care to see that such a licensee is not injured.'' (Citing a number of cases.) In the instant case, however, the circumstances shown in the record go further and establish that the plaintiff in this action was at the polling-place in question, by the express invitation of the County of Siskiyou, notifying all voters of precinct No. 5 to cast their ballot at the place designated.

This brings us to what we think is the crux of the whole matter involved in this action, to wit, the responsibility of the owner of property let to a tenant to be used for a public or semi-public purpose. Under such circumstances the owner owes it to the public as the third party, and in this case the city owed it to the plaintiff as a third party, to see that the premises were reasonably safe for the uses and purposes intended to be made thereof.

In 36 C. J. 208 we find the rule thus stated: ''While, as a general rule, all those entering under the tenant's title have no greater rights against the landlord than a tenant himself would have had, an exception to this rule prevails, according to the weight of authority, in respect to injuries sustained by invitees of a tenant by reason of a dangerous condition amounting to a nuisance existing on the premises at the time of the letting, and particularly when the premises are demised for public or semi-public purposes, and in such cases a landlord is liable even without actual knowledge of the defects.''

The statutes which we have quoted, adopted by the legislature in 1923, change this rule in so far as knowledge is concerned, but otherwise we think it applies to this case. The rule towards invitees of the owner or occupant in charge of property is as follows (45 C. J. 823): ''While the owner, occupant or person in charge of property is not an insurer of the safety of an invitee thereon, he owes to an invitee the duty of exercising reasonable or ordinary care for his safety, and is liable for injury resulting from breach of such duty,

although no element of lawlessness or wantonness enters into the act or omission complained of. The duty in this respect is an active, affirmative or positive one, and is not limited to merely refraining from injurious acts, although there is always a duty to refrain from any act which may make the invitee's use of the premises dangerous or result in injury to him.''

In 16 Ruling Case Law, page 1069, the law cited by numerous authorities is stated: ''Notwithstanding the general application of the rule of *caveat emptor* above stated, as exempting the landlord from liability for injuries arising from defects in the premises existing at the time of the lease, there are a number of decisions which hold that where the property is leased for public or semi-public purposes, and at the time was not safe for the purposes intended, or when there is a dangerous condition of the premises which is in the nature of a nuisance, and the owner knew, or by the exercise of reasonable diligence ought to have known of such condition, he cannot evade liability to a third person for damages resulting from such conditions. But it is his duty to make such property reasonably safe for the purposes intended, or discontinue the conditions which are in the nature of a nuisance, as the case may be.'' etc.

In the case of *Larson* v. *Calders Park Co.*, 54 Utah, 325 [4 A. L. R. 731, 180 Pac. 599], the Supreme Court of Utah, in considering the duty of the owner of property leased for public or semi-public purposes, used this language: ''Where property is leased to a tenant for a public use the care required by the landlord should be of a higher degree than when the property is let for private purposes. Public policy demands such care for the protection of the public and this is particularly applicable here in Utah, where public resorts and amusement parks are numerous and their attractions varied and alluring. In *Beaman* v. *Grooms*, 138 Tenn. 325 [L. R. A. 1918B, 307, 197 S. W. 1090], the court says: 'While, so far as the basic question of the imposition of the duty on a landlord to know the condition of the premises he leases is concerned, no distinction can be made between private and public buildings or premises (citing a number of cases) ; it seems to be fair and reasonable to hold that due care on his part calls for greater exertion in the case of

premises intended for use by the public than when they are let for purely private purposes.'" (Citing cases.)

To the same effect are a number of cases set forth in the annotations found in 22 California Law Reports, 624, dealing with the duty and liability of a lessor, where property is leased for public or semi-public purposes. The cases collected and annotated are too numerous to be set forth herein; hence, we refer only to the volume and page.

We may here again call attention to the fact that the legislative act quoted in this opinion has for its purpose the protection of the public in the use of public property, and the duty of the owner of public property keeping the same in a safe condition.

The appellant calls our attention to the cases of *Sincerney* v. *City of Los Angeles*, 53 Cal. App. 440 [200 Pac. 380], and *Beeson* v. *City of Los Angeles*, 115 Cal. App. 122 [300 Pac. 993]. In the former case the city of Los Angeles was held not liable for injury resulting to an employee of a trespasser, upon the streets of the city. This case was decided prior to the act of the legislature in 1923, making municipalities liable just the same as the owners of private property, subject only to knowledge of the defective condition, and of time to remedy the same. This case may also be distinguished from the one at bar, for the simple reason that the plaintiff in this action was not a trespasser, but was upon the premises for the uses and purposes contemplated both by the city and by the County of Siskiyou. In the Beeson case a minor son of the plaintiff was drowned by falling into a pool of water in a drainage ditch. The evidence set forth in the opinion shows that the pool was not an attractive nuisance, was not connected with any playground, and was not intended for public use.

While the erection and maintenance of an enginehouse by a city is governmental, it is unnecessary to cite authorities to show that when a city leases a portion of its property, as was done in this case, it is proprietary in character. This is said without deciding whether the act of the legislature of 1923 has or has not abolished such distinction, when the duty to render the same safe for the use of the public is involved.

That a landlord is liable for injuries occurring to third persons, by reason of the unsafe and dangerous con-

dition of the leased premises, when the unsafe or dangerous condition was known and existed at the time of the leasing is clearly set forth, and abundantly supported by authorities cited in the recent case of *Dennis* v. *City of Orange,* 110 Cal. App. 16 [293 Pac. 865].

A number of other cases have been cited by the respondent in support of the contention that the Town of Yreka City is liable as well as the County of Siskiyou (the County of Siskiyou has not appealed from the judgment), but are not referred to herein for the reason that the authorities cited seem to us conclusive. We may, however, add that section 1941 of the Civil Code is applicable so far as the duty is cast upon the landlord, to make property reasonably safe, intended for use by the general public.

The judgment is affirmed.

Thompson (R. L.), J., and Preston, P. J., concurred.