[Civ. No. 13355.   Second Dist., Div. Two.   Apr. 28, 1942.]

FLORENCE R. KING, Appellant, v. NEW MASONIC TEMPLE ASSOCIATION (a Corporation), Respondent.

Cupp, Hunt & Henderson, Joseph A. Ball and Kenneth Sperry for Appellant.

Spray, Davis & Gould for Respondent.

McCOMB, J.—Plaintiff appeals from a judgment in favor of defendant New Masonic Temple Association after the trial court granted said defendant's motion for a nonsuit in an

action to recover damages for personal injuries received by plaintiff.

The following is a picture of the scene of the accident hereinafter described:

Viewing the evidence in the light most favorable to plaintiff, as we must in reviewing a judgment predicated on a motion for a nonsuit (*Guyer* v. *Pacific Elec. Ry. Co.*, 24 Cal. App. (2d) 499, 500 [75 P. (2d) 550]), the material facts are:

The Woman's City Club of Long Beach is a civic and social corporation organized pursuant to division 1, title 12, part 4 of the Civil Code. On October 6, 1939, the club had been in existence for approximately twenty-seven years and had a membership of several hundred women. Its affairs were managed and controlled by a board of directors and officers. Regular meetings of the club were held each Friday at 2 p. m. from October 1 to May 1. All members of the club paid a $2 initiation fee and annual dues of $2 each. A member was entitled to three guest cards per year. Non-members were admitted to club meetings upon the payment of 25 cents. Gentlemen were welcome without charge at all regular meetings.

The Woman's City Club had been holding its regular meetings and programs since 1935 on the third and fifth floors of the New Masonic Temple, pursuant to an arrangement with defendant New Masonic Temple Association, which

provided for the use of the fifth floor at $40 per meeting or the third floor at $20 per meeting, and which also provided that the lessor should furnish chairs for the meetings of the club. The lessee had nothing to do with preparing the room for occupancy, that matter being taken care of entirely by the lessor.

The room which was used on October 6, 1939, the date of the accident hereinafter described was known as the Corinthian Room and had three rows of fixed seats around the east, west, and north sides of the room, which were elevated on tiers, each row being six inches higher than the next preceding row. There were 118 stationary chairs on the west side of the room, an equal number on the east, and a somewhat lesser number on the north, with approximately 300 folding chairs in the open space in the center of the room. Access to the second and third tiers of seats on the west side of the room was obtained by the use of a passageway at the northwesterly corner of the room. The first row of chairs was on a platform six inches above the level of the floor and the other two rows were each six inches above the first and second rows respectively.

At about the center of the stationary seats on the west side of the room there was a break or open space between the first and second rows of seats. Instead of a six-inch step from the top row of seats to the next lower level there was a twelve-inch step. This opening was designed to accommodate a large chair when the room was used for lodge purposes. The covering of the floor, including the raised portions thereof at the side, was all made of the same material. On the day in question the lodge chair had been removed by the janitor from the opening above described, and nothing had been placed therein, nor was the opening roped, nor was there any other indication that the opening was of a greater depth than the usual six-inch step from one level to another on the sides of the room. The opening thus left was five feet wide, five feet three inches from front to back, and twelve inches deep.

Prior to October 6, 1939, plaintiff had been in the Corinthan Room on two occasions. On the date mentioned she entered the room about 1:30 p. m. at the northwest corner, turned to her right and ascended by three steps to the top row of seats. She then went along the row until she came to a vacant seat which she occupied. A few minutes later she saw her sister enter the room, and, observing two seats to-

gether on the main floor of the room, arose from the seat, walked sideways along the aisle between the second and third row of seats toward the opening described above. When she reached the opening she stepped down, believing that there was merely a six-inch step. However, in place of the six-inch step was the twelve-inch depression and plaintiff fell, receiving personal injuries. To recover damages for her injuries she instituted the present action.

█ It is necessary for us to determine two questions which will be stated and answered hereunder seriatim.

*First: Did the defendant lessor owe plaintiff a duty with respect to the condition of the leased premises?*

. This question must be answered in the affirmative and is governed by the following established principle of law:

Where property is leased for a public or semi-public purpose and at the time is not safe for the purpose for which it is leased or there is a dangerous condition on the premises known to the lessor or which by the exercise of reasonable diligence he should have known existed, the lessor is liable to a third person for damages resulting from the condition of the leased property. (*Boothby* v. *Town of Yreka City*, 117 Cal. App. 643, 649, 651 [4 P. (2d) 589]; *Junkermann* v. *Tilyou Realty Co.*, 213 N. Y. 404 [108 N. E. 190, 191]; 32 Am. Jur. (1941), Landlord & Tenant, sec. 668, p. 535.)

*DeMotte* v. *Arkell*, 77 Cal. App. 610 [247 Pac. 254] is inapplicable to the facts of the present case. In the DeMotte case the lessee of the premises was the Odd Fellows Lodge which was an unincorporated association. Plaintiff DeMotte was a member of the lodge and as such was a tenant in common with his fellow members of the leased premises and therefore was not entitled to maintain the action against the lessor under the established rule that a lessor is not liable to his lessee for injuries resulting from the unsafe condition of the leased property. In the instant case, however, the lessee was a corporation, which is a distinct legal entity in the eyes of the law and, therefore, separate and apart from its members. (6A Cal. Jur. (1932) 67, sec. 18, 73, sec. 21.) Hence, plaintiff was not a tenant in common of the leased premises with the corporation. She had no right to alter or make any changes in the leased premises and was not a tenant thereof. Therefore, so far as the instant case is concerned, she was a third party within the purview of the general rule above stated, and such rule is applicable to the present case.

*Second: Did the evidence establish negligence on the part of the defendant lessor?*

For the purposes of the motion for a nonsuit this question must be answered in the affirmative. We believe the facts as stated above are susceptible of the fair inference that plaintiff having ascended three steps to attain the top row of seats was justified in assuming from the general construction of the room and the identity of pattern of the floor covering that there were three steps to the main floor, and that therefore defendant lessor was negligent in not providing a guard around the depression or a warning of some type.

These were questions which in our opinion should have been left to the determination of the trier of fact from all of the evidence presented. (See *Oles* v. *Kahn Bros.*, 81 Cal. App. 76, 81 [253 Pac. 158] ; *Touhy* v. *Owl Drug Co.*, 6 Cal. App. (2d) 64 [44 P. (2d) 405].)

Applying the above rules to the facts of the instant case, we find that plaintiff was a third person to whom defendant lessor owed a duty of reasonable care, that for the purposes of the motion for a nonsuit there was substantial evidence to sustain a finding that the lessor defendant was negligent, and that its negligence was a proximate cause of plaintiff's injury, also that plaintiff was not contributorily negligent.

For the foregoing reasons the judgment is reversed.

Moore, P. J., and Wood (W. J.), J., concurred.