[Civ. No. 16175. First Dist., Div. One. Jan. 11, 1955.]

MERVIN A. LEWIS, Appellant, v. COUNTY OF CONTRA COSTA et al., Respondents.

Russell F. King for Appellant.

Carlson, Collins, Gordon & Bold, John Ormasa, Hagar, Crosby, Rosson & Vendt and Lewis E. Lercara for Respondents.

WOOD (Fred B.), J.—Plaintiff was injured when, in crossing a public highway, he jumped over a mud filled gutter onto a mud covered sidewalk, slipped and fell.

He joined Earl Smith and the County of Contra Costa as defendants: Smith because, allegedly, excavations on his nearby land loosened the soil which was carried down to and onto the sidewalk and highway by the surface run-off whenever it rained; the county, because it allegedly suffered the alleged nuisance on Smith's land to continue unabated and failed to remedy a dangerous and defective condition in the highway.

Verdict was for the defendants and plaintiff has appealed. He claims insufficiency of the evidence, error in the admission of evidence, and error in the giving and refusing of instructions.

(1) *The evidence amply supports the verdict*, viewed either as a case of assumption of risk or of contributory negligence.

Plaintiff, a mail carrier of many years' experience, was delivering mail afoot. He had been "zigzagging" back and

forth across the highway in making deliveries.* He had been proceeding in this fashion along Canyon Road for some distance without difficulty until, at his next crossing (not at a street intersection; it was in the middle of a block), he encountered an area where wet mud filled the gutter and covered the sidewalk along the front of three or four 50-foot lots. Instead of going around this area he jumped across the gutter onto the sidewalk, skidded and fell. He admitted that he knew he was jumping on mud and knew the mud would be slippery.

 (2) *Was it prejudicially erroneous to admit evidence that at the time of the accident plaintiff had accumulated sufficient sick leave to cover the period of his disablement?*

It was error to admit this evidence over plaintiff's objection. The general principle is that damages recoverable by an injured party cannot be reduced in the amount of payments for his loss from a source wholly independent of the wrongdoer. Thus, in *Gersick* v. *Shilling*, 97 Cal.App.2d 641, 649-650 [218 P.2d 583], it was held error to elicit from plaintiff the information that her hospital bills had been paid by the Blue Cross and that she had drawn $460 from the United States Employment Service for disability. In *Anheuser-Busch, Inc.* v. *Starley*, 28 Cal.2d 347 [170 P.2d 448, 166 A.L.R. 198], plaintiff sued a person whose car allegedly collided with the truck of a common carrier and injured property of the plaintiff which was being transported by the carrier. The fact that the carrier had compensated plaintiff for its loss was no defense to the action. The court stated the rule and added "[t]he rule has been applied where the independent source is pension systems or charity." (P. 349.) That rule seems especially applicable here. Plaintiff used up his accumulated sick leave. In a very real sense of the term it is as if he had drawn upon his savings account

---

*Plaintiff said his mail was so ''cased'' as to call for zigzagging. Yet, a post office official under whose supervision plaintiff worked testified it is the policy of the post office to route a carrier down one side of a street and back up the other, not to require zigzagging; that it is the practice to predetermine and ''case'' the route to assure delivery in the quickest possible time but that a carrier may alter his path to meet changed conditions; when confronted by a situation he has discretion to decide what to do. Plaintiff concurred, stating that if asked the same questions he would give the same answers. Even if his employer accorded plaintiff no such discretion, that would not change the nature and scope of the defendants' duties toward the plaintiff.

in an amount equal to his salary during the period of his disablement.

But this error was not prejudicial. The verdict clearly indicates that the jury found there was no liability and did not reach the point of fixing the amount of damages sustained.

Plaintiff contends that this evidence operated as an "unfair attack" upon his "credibility" as a witness "because the jury might infer he was attempting to recover twice for the same injury." We fail to see the logic of such an argument. The evidence had no tendency to impeach his own description of the accident and the surrounding circumstances.

(3) *Was the giving of certain erroneous instructions on the assumption of risk prejudicial?*. The instructions on assumption of risk were not limited to the situation in which a person having actual knowledge of a dangerous condition voluntarily exposes himself to that danger but extended to a person who "in the exercise of ordinary care would know" that the danger exists.* The quoted portion has been disapproved in *Hayes* v. *Richfield Oil Corp.* 38 Cal.2d 375, 384-385 [240 P.2d 580] and in *Prescott* v. *Ralphs Grocery Co.*, 42 Cal.2d 158, 161-162 [265 P.2d 904], holding that there must be actual knowledge or its equivalent.

This error, however, was not prejudicial. The facts demonstrate that plaintiff actually knew or must have known of the hazard. He testified that he knew of the presence of mud in the gutter and on the sidewalk and that the mud was slippery. Yet, instead of going beyond the point of hazard or of retracing his steps a mere 100 feet or so to the point where he had last crossed the street without difficulty, he took a chance and jumped, with the untoward results already narrated. In explanation, he says he did not at the time know how thick the mud on the sidewalk was (there is evidence it was an inch thick), suggesting that in the absence of such knowledge he was not fully aware of the hazard. We do not see the logic of that argument. He was thoroughly aware that the mud covered the sidewalk and that it was slippery. That would seem sufficient to put any adult person upon actual notice of the hazard. "Where the facts are such that the plaintiff must have had knowledge of the hazard, the situation is equivalent to actual knowledge . . ."

*These instructions included B.A.J.I. Nos. 207 and 207-B, third revised edition. They were given at the request of defendant Smith.

(*Hayes* v. *Richfield Oil Corp., supra*, 38 Cal.2d 375, 385, and *Prescott* v. *Ralphs Grocery Co., supra*, 42 Cal.2d 158, 162.) As to the type of risks "which anyone of adult age must be taken to appreciate," see Prosser on Torts (1941), 386-387, section 51, and authorities there cited.

 It is improbable that the jury would have rendered a different verdict had the erroneous portion of the instructions been omitted. The jury did ask a rereading of the instructions concerning assumption of risk and contributory negligence, which were thereupon again read to them at length. That of itself does not suggest to us that the jury may have applied the assumption of risk doctrine upon the theory that defendant was unaware of the hazard but would have been aware of it had he exercised due care. If they did apply the assumption of risk doctrine, we think they must have applied it upon the theory of actual knowledge. In view of these circumstances we conclude that the error under discussion was not prejudicial.

(4) *Was it prejudicial error to refuse certain instructions requested by the plaintiff concerning the duties of the county?*

One of these instructions read as follows: ". . . If you find that defendant Earl Smith had created or was maintaining a public nuisance, you are further instructed that defendant County of Contra Costa could, by proper application to the District Attorney's office, have such nuisance abated."

 Even if we assume that the defendant Smith was maintaining a nuisance, it does not follow that the county owed plaintiff a duty to abate that nuisance or respond in damages to the plaintiff for injuries caused by the condition which constituted the nuisance. Plaintiff cites no authority for any such doctrine. The logic of plaintiff's argument would comprehend a liability upon the part of the county or of the state whenever any person suffers personal injury or property damage at the hands of any person maintaining a nuisance if the county or the state fails to abate the nuisance after reasonable notice of its existence. There is no such doctrine.

 The measure of county liability is defined by statute, the Public Liability Law (Gov. Code, §§ 53050-53056), which imposes a liability under certain conditions in respect to injuries resulting from dangerous or defective property of the county. The county is not thereby made responsible for injuries caused by conditions maintained by others upon property neither owned by nor under the control of the county.

Of the following instruction requested by the plaintiff the court gave the first sentence but deleted the remainder of it: "The County of Contra Costa not only has the duty to repair a dangerous or defective condition of its streets and highways *after* it occurs, but to reasonably anticipate that a pre-existing condition of which it has notice, will become dangerous when affected by natural elements.

"That is to say, that if you find from all the evidence that defendant County of Contra Costa had actual or constructive notice of a pre-existing condition [which] when affected by the natural elements, made Canyon Road dangerous for ordinary use, they would be required to exercise ordinary care to correct or alleviate such pre-existing condition so as to keep their streets and highways reasonably safe at all times." The county claims that the deleted portion of this instruction would have informed the jury that the county was under a duty to correct a condition on land not belonging to the county and over which the county had no control. We think that is a reasonable interpretation. The "pre-existing condition" mentioned reasonably had reference to the condition of excavated and loosened soil on defendant Smith's land and the "natural elements" reasonably referred to the surface run-off during the rainy season which carried some of that eroded soil down to the county road and deposited it in the form of mud in the gutter and upon the sidewalk. That such was plaintiff's intent when he used those terms in the rejected portion of the instruction, appears quite clearly from his brief. ■ In effect, therefore, the deleted portion of this instruction would have erroneously advised the jury that the county was legally responsible to the plaintiff for the conditions allegedly maintained by the defendant Smith upon his land. *Shea* v. *City of San Bernardino*, 7 Cal.2d 688, 692-693 [62 P.2d 365], is inapplicable. It involved the duties of a city toward the public in relation to conditions at a grade crossing; conditions in a city street, not conditions on private lands under private control.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.

A petition for a rehearing was denied February 10, 1955.