[Civ. No. 18703. First Dist., Div. Two. Oct. 4, 1960.]

NELLIE F. OBRIEN, Appellant, v. FONG WAN et al., Respondents.

C. Ray Robinson, Charles E. Goff and Daniel J. Higgins for Appellant.

Berry, Davis & Channel, Ricksen, Hogan & Vendt, Richard G. Logan, Carl R. Vendt, Francis W. Foley, Woodrow W. Kitchel and D. W. Brobst for Respondents.

SHOEMAKER, J.—Plaintiff Nellie F. Obrien brought this action for personal injuries received in a fall down a flight of stairs. This is an appeal by her from judgments granting nonsuits to the defendants Richard R. Fong, Edward E. Fong, Grodins of California and Y. Saito. The action as to defendant Fong Wan was dismissed by plaintiff before trial. Since we are charged in this case with determining whether the granting of the nonsuits was proper we have

viewed the evidence in accordance with the rule that an appellate court must resolve every conflict in the testimony in favor of the plaintiff, consider every inference which can reasonably be drawn and every presumption which can fairly be deemed to arise in support of the plaintiff and accept as true all evidence adduced, direct and indirect. (*Coates* v. *Chinn* (1958), 51 Cal.2d 304, 306 [332 P.2d 289].)

The facts of this case are as follows: On May 14, 1956, at approximately 10 a. m. on a clear sunny morning, the plaintiff was walking west on the south side of 14th Street in downtown Oakland. She stopped at the Golden Pagoda to look at a display of kimonos in the windows. The window she was looking at bordered on a recessed entranceway to a staircase leading to the basement. She walked close to the window to examine a price tag, stepped a little closer, and fell down the flight of stairs. She did not see the stairway and did not look. Although the recessed area was not sunny, it was bright. The testimony without conflict established that it was easy to see the stairway and that there was no difficulty in so doing. Plaintiff testified that she had been by the store on other occasions and had seen the stairway. The head of the stairway where plaintiff fell was located 5 feet from the sidewalk line and the entrance to the stairway was 5½ feet wide. The entranceway was tiled with green and gray tile. There was testimony that the stairway was dark at the bottom but the top of the stairway and the recessed area were bright. There were railings on both sides of the stairway. A chain was attached at both sides, which was fastened across the stairway at night but unfastened during the day, as it was at the time of the accident.

Defendant Saito was proprietor of the Golden Pagoda, occupying the premises on a month-to-month basis holding over under the terms of a lease after the expiration of its period. The recessed area was not included in the terms of the lease. The only maintenance done by Saito under his lease was to wash his windows. The entranceway and stairway led to the basement of the building, which was occupied and used by defendant Grodins of California for storage purposes and was not used by the general public. Grodins' lease included the entire basement area, the stairs and the recessed entranceway. The basement was operated weekdays by two or three employees. The chain across the stairway was in control of Grodins and unfastened during working hours to facilitate delivery of merchandise. The owners and lessors of the build-

ing in which the premises in question were located are the defendants Richard Fong and Edward Fong. There were no defects, foreign materials or other obstructions in the entrance-way at the time of the accident.

After a thorough consideration of the various points raised by the plaintiff, which we shall hereafter discuss in detail, we have concluded that this case comes within that class of cases of which *Blodgett* v. *B. H. Dyas Co.* (1935), 4 Cal.2d 511 [50 P.2d 80], is a leading example. It is true that the Blodgett case treats the plaintiff as an invitee (a status we are unwilling to accord the plaintiff in this case). (See *Smith* v. *Epstein Realty Co.*, 133 Neb. 842 [277 N.W. 427], cited with approval in *Rufo* v. *N.B.C. Nat. Broadcasting Co.*, 166 Cal.App.2d 714 at p. 722 [334 P.2d 16].) However, we can understand plaintiff's position, for an invitee enjoys a higher degree of care on the part of the owner or occupier of property.

The Blodgett case facts need not be detailed; suffice it to say they are so close to those of the present case any difference is inconsequential.   [█   Particularly appropriate to our discussion is the statement of the rule and the following language of the opinion commencing at page 512:

"The owner of property, in so far as an invitee is concerned, is not an insurer of safety but must use reasonable care to keep his premises in a reasonably safe condition and give warning of latent or concealed perils. He is not liable for injury to an invitee resulting from a danger which was obvious or should have been observed in the exercise of reasonable care. (*Shanley* v. *American Olive Co.*, 185 Cal. 552 [197 P. 793]; *Mautino* v. *Sutter Hospital Assn.*, 211 Cal. 556 [296 P. 76].)

█   "A person walking through the busy streets of a large city is charged with the knowledge that there are many open stairways leading to basements of mercantile establishments. There is no duty to give any warning in broad daylight of the presence of a stairway and persons must use their eyes to protect themselves from such obvious dangers. [Citing cases.]"

█   We pass now to the propositions advanced by the plaintiff to produce a reversal of the judgment. Plaintiff refers to section 1714, Civil Code, which reads as follows:

"Everyone is responsible, not only for the result of his willful acts, but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself. The

extent of liability in such cases is defined by the title on compensatory relief.''

Plaintiff contends that under this section there is no distinction as to the duty imposed to exercise reasonable care as to the management of one's property upon the basis of an injured person's status upon land and that the trial court therefore erred in applying the common-law doctrine, which distinguishes a possessor of land's duty toward invitees, licensees and trespassers. In support of this position plaintiff relies on *Hession* v. *City & County of San Francisco* (1954), 122 Cal.App.2d 592, 601 [265 P.2d 542] ; *Fernandez* v. *Consolidated Fisheries, Inc.* (1950), 98 Cal.App.2d 91, 95 [219 P.2d 73] ; and *Fernandez* v. *American Bridge Co.* (1951), 104 Cal.App.2d 340, 343 [231 P.2d 548]. These authorities are not helpful. The facts are entirely different. They present what are so often referred to as borderline situations. ▮ We remain of the same mind as we expressed in the Hession case where at page 602 it is stated: ''Certainly where, as here, there are very special relations which cannot with any certainty be brought under either the category of invitee or licensee, the care required should not be decided on the basis of the affixing of an inappropriate label but on the basis of common sense applied to the actual facts.'' ▮ These cases recognize that this section of the Civil Code was adopted from the civil law but then go on to apply common-law principles to dispose of the action. The application of common-law distinctions here is soundly based, for in applying common-law rules the courts really work back towards the more general rule of the section in question, that is, requiring due care under the circumstances. Thus in formulating duties toward persons based upon their status upon land, the courts are actually applying this broad statutory provision. Suffice it to say that case law in California abounds in authority as to the existence and the validity of the common-law distinctions.

▮ The plaintiff next contends that defendant Saito owed her the duties due an invitee. This argument is specious for we gather from the record and briefs that the trial court for the purpose of its ruling accepted plaintiff's contention that as to Saito she was an invitee but that she had heedlessly walked into an obvious danger and hence could not recover a judgment against him. We point out that to the extent her theory is based upon the assumption that Saito's lease included the entranceway she is clearly wrong ; it did not (Exhibit 11), while Grodins' lease did include that area (Exhibit 12). She

cites a host of cases stating the rule that the mere fact that a person does not currently intend to make a purchase does not prevent him from being an invitee; that the potential business benefit to the possessor of the premises creates an invitation by implication. (*Oettinger* v. *Stewart* (1944), 24 Cal.2d 133, 136 [148 P.2d 19, 156 A.L.R. 1221]; *Delay* v. *Braun* (1944), 63 Cal.App.2d 8, 10 [146 P.2d 32]; *Kircher* v. *Atchison, T. & S.F. Ry. Co.* (1948), 32 Cal.2d 176, 185 [195 P.2d 427]; *Crane* v. *Smith* (1943), 23 Cal.2d 288, 297 [144 P.2d 356].) However, in all the cited cases the parties were actually physically within the premises of the invitor. Since plaintiff was not on Saito's premises at all or premises under his control, he owed her no duty as an invitee. Further, even though we agree with plaintiff and assume she was Saito's invitee, plaintiff is in no better position to prevail for all witnesses questioned indicated it was easy to see the stairway and there is no obligation to warn an invitee of a danger which is obvious. (*Royal Ins. Co.* v. *Mazzei* (1942), 50 Cal.App.2d 549, 552 [123 P.2d 586]; *Delk* v. *Mobilhomes, Inc.* (1953), 118 Cal.App.2d 529, 532 [258 P.2d 75].)

Plaintiff next argues that even if she were not Saito's invitee he owed her a duty of ordinary care. The cases cited by plaintiff theorizing a breach of duty under this heading are so inapplicable that they do not merit distinction.

Her final argument as to Saito is that assuming he did not occupy the landing, he is liable because he led her into a trap. The cases cited in support of this contention are so different on the facts that they cannot by any logical reasoning be held to be of any aid to plaintiff's case, which without conflict establishes that the danger present was obvious. In our opinion no duty towards plaintiff, under any theory discussed, was breached by Saito.

Plaintiff then turns to the defendant Grodins and argues that it owed her a duty of ordinary care, on the assumption that she was an invitee on adjoining land. This line of argument is completely without foundation inasmuch as she was not an invitee of Saito, and she was not on adjoining land of Grodins but rather was injured upon Grodins' own premises. Further, the citations here covering a variety of aspects of the law of torts are uniformly not in point, even if she were an invitee on adjoining land.

She next urges she was Grodins' implied invitee. Grodins' area was used solely for storage, it was not open to the general public, and Grodins could derive absolutely no

business benefit from plaintiff's presence in the entranceway. As indicated earlier, even an implied invitee enters for some purpose of common interest or mutual benefit with the possessor (*Oettinger* v. *Stewart, supra*); this was obviously not the case here and plaintiff was just as obviously not an implied invitee of Grodins. It is our conclusion that as far as Grodins is concerned the plaintiff was a licensee.

Plaintiff then states that even if she were merely a licensee on Grodins' entranceway, Grodins is liable to her because the stairway constituted a trap. (*Hall* v. *Barber Door Co.* (1933), 218 Cal. 412, 420 [23 P.2d 279]; *Donahoo* v. *Kress House Moving Corp.* (1944), 25 Cal.2d 237, 247 [153 P.2d 349]; *Yazzolino* v. *Jones* (1957), 153 Cal.App.2d 626, 636 [315 P.2d 107]; *Boucher* v. *American Bridge Co.* (1950), 95 Cal.App.2d 659, 668 [213 P.2d 537].) The theory of liability for a "trap" is not in point for the same reasons as when it was argued in respect to respondent Saito, for all the "trap" cases involved defective or concealed hazards while in the present case, as indicated earlier, the danger was obvious.

The plaintiff contends that the act of dropping the chain every morning was active negligence. In this contention she relies on *Newman* v. *Fox West Coast Theatres* (1948), 86 Cal.App.2d 428, 432 [194 P.2d 706] and *Laidlaw* v. *Perozzi* (1955), 130 Cal.App.2d 169, 172 [278 P.2d 523] to indicate that an occupant is liable to a licensee for injuries flowing from a negligent act. Without delving too far into the complexities of distinguishing "active" from "passive" negligence, it would appear that unfastening the chain is analogous to the unlatching of a door in the last cited case. Assuming the presence of "active" negligence as therein considered, the cited cases impose the duty of reasonable care under the circumstances towards the licensee—the occupant must rectify the condition or warn the person of it. They do not hold an occupant of land to a more stringent duty towards a licensee by labeling conduct "active" than the standard occupants are usually held to in cases of invitees. Here the plaintiff admitted she had seen the stairway prior to the accident; in addition the undisputed evidence demonstrated that it was readily observable. Since there is no obligation to warn an invitee of a hazard which is obvious (*Royal Ins. Co.* v. *Mazzei, supra*; *Delk* v. *Mobilhomes, Inc., supra*), there can be none towards a licensee under these conditions. This is especially true in view of the language of *Blodgett* v. *B. H. Dyas Co., supra*.

The plaintiff argues that the defendant landlords,

the Fongs, breached a duty to her as a member of the public in failing to see that the premises were reasonably safe for the purposes intended to be made thereof. There is such a duty where the landlord leases a property for public purposes with knowledge that many members of the public will be admitted to the premises. (*Hayes* v. *Richfield Oil Corp.* (1952), 38 Cal. 2d 375, 380 [240 P.2d 580], service station and parking lot; *Boothby* v. *Town of Yreka City* (1931), 117 Cal.App. 643, 649 [4 P.2d 589], polling place; *Burroughs* v. *Ben's Auto Park, Inc.* (1945), 27 Cal.2d 449, 453 [164 P.2d 897], parking lot; *Rau* v. *Redwood City Woman's Club* (1952), 111 Cal.App. 2d 546, 549 [245 P.2d 12], auditorium; *King* v. *New Masonic Temple Assn.* (1942), 51 Cal.App.2d 512, 515 [125 P.2d 559], auditorium; *Goodman* v. *Harris* (1953), 40 Cal.2d 254, 261 [253 P.2d 447], ski cabin rental.) However, here the premises were not rented for public or semipublic purposes, but rather for storage, and the entranceway and stairs were used for ingress and egress of merchandise. *Granucci* v. *Claasen* (1928), 204 Cal. 509, 512 [269 P. 437, 59 A.L.R. 435] and *Sexton* v. *Brooks* (1952), 39 Cal.2d 153, 157 [245 P.2d 496] held landlords liable for injuries suffered by the public upon sidewalks caused by alterations made by the landlords for their own purposes; these cases are not in point factually. The rule which governs liability here is that, absent fraud or concealment, a landlord is not liable to an invitee for injury upon the leased premises. (*Jones* v. *Regan* (1959), 169 Cal. App.2d 635, 639 [337 P.2d 889].) Nor is a landlord liable to an invitee where the danger is obvious. (*Fletter* v. *City & County of San Francisco* (1952), 110 Cal.App.2d 820, 825 [244 P.2d 59].) In our opinion there was no breach of duty by the landlords.

The final question of plaintiff's contributory negligence becomes moot in view of the previous analysis; however, inasmuch as the trial court relied heavily upon the point in granting the nonsuit, and because of the earnestness with which the litigants have briefed the issue, it warrants discussion. In *Blodgett* v. *B. H. Dyas Co., supra,* the plaintiff, intent upon a suit of clothes in defendant's store window, stepped into a recessed entranceway and fell upon the stairway which she did not see although it was a bright day. The court held that under such circumstances the woman was guilty of contributory negligence as a matter of law. The plaintiff argues that there is a factual distinction; the only difference really was the width of the stairs, in the present case 5½ feet, in the

Blodgett case 10 feet. Plaintiff cites several cases which have distinguished the Blodgett case in finding no contributory negligence; they did so because important factual distinctions were present, generally because the danger was not obvious.

The plaintiff also states that although she did not so testify, it is to be inferred that she forgot the stairway; otherwise surely the accident would not have happened and this forgetting does not make her contributorily negligent as a matter of law. This case does not present a state of facts that warrants consideration of the effect of forgetfulness of hazard on the issue of contributory negligence. The controlling factors here are that she stopped to examine a window display, took several steps closer thereto, and without looking where she was stepping, stepped into a clearly observable stairway and an accident.

The burden was on the plaintiff to establish the elements of her case. There was no proof of negligence on the part of any defendant. Under the circumstances the granting of the motions for nonsuit was in order.

Judgments granting nonsuits affirmed.

Kaufman, P. J., and Draper, J., concurred.