[Civ. No. 12054. First Dist., Div. Two. Sept. 1, 1942.]

ANTHONY SATARIANO, a Minor, etc., et al., Appellants,
v. WILLIAM R. SLEIGHT et al., Respondents.

R. V. Bressani and D. T. Jenkins for Appellants.

Louis Oneal, Duncan Oneal, Frank V. Campbell and Campbell, Rankin & Hayes for Respondents.

DOOLING, J. pro tem.—The plaintiffs appeal from a judgment of nonsuit granted at the close of their case. The action was one for personal injuries. On February 16, 1940, Anthony Satariano, a minor seventeen years of age, was a student in the San Jose High School. The gymnasium of the San Jose High School was located on the westerly side of Seventh Street in San Jose and the athletic field of the high

school was located in the block between Eighth and Ninth Streets. In order to reach the athletic field from the gymnasium it was necessary for the students to cross Seventh Street.

On the morning in question young Satariano and a fellow student named Davis, after changing their clothing in the gymnasium, started to go to the athletic field for a 9:21 class in physical education. They went from the gymnasium into an alley which led to Seventh Street. Being somewhat late they started to run. Satariano was three or four feet ahead of Davis. When they reached the corner of the gymnasium building Davis turned to his left and went in a northerly direction for some distance before turning to go across Seventh Street. Satariano went straight forward from the alley across the sidewalk and into the street. Davis did not see Satariano from the time that Davis turned to his left at the corner of the gymnasium until he had reached a point in Seventh Street twenty or more feet from the westerly curb line. His attention was then attracted by a sound of automobile brakes to his right and he looked in that direction ''and saw Tony flying up in the air a little there, and then I couldn't see him any more.'' At the time that Davis turned to his left, and thus lost sight of Satariano, Satariano was near the curb and still running.

Young Satariano suffered a brain concussion and remembered nothing of what had happened after leaving the gymnasium, and no witness was produced by the plaintiffs who gave any testimony of Satariano's conduct from the time that he was last seen by Davis running toward the street to the moment when Davis saw him ''flying up in the air'' after his impact with the automobile. The portion of Seventh Street on which Satariano was crossing was not at an intersection and was not a marked crosswalk.

The respondents claim that the evidence produced by the plaintiffs shows that Satariano was guilty of contributory negligence as a matter of law. We cannot so hold.

The duty was cast on Satariano to yield the right of way to the automobile. (*Genola* v. *Barnett*, 14 Cal. (2d) 217 [93 P. (2d) 109].) The most that can be said of the plaintiff's evidence is that it is silent upon the question of whether he exercised reasonable care to do so. Respondents say that it is clear that Satariano ran blindly in front of the automobile. It is not at all clear that he did so. From the evidence, including a map of the scene of the accident marked by Davis

as a part of his testimony, the jury could have found that between the time that Davis turned to his left and the moment of impact Davis traveled more than twice the distance covered by Satariano. If so, Satariano in going from the sidewalk to the point of impact must have reduced his speed to less than one-half of what it was when Davis last saw him. The burden to prove contributory negligence was on the defendants. Far from compelling a finding that Satariano ran in front of the automobile, the evidence would be entirely consistent with the conclusion that he was yielding the right of way when struck. With the burden of proof on defendants, testimony given on the plaintiffs' case must be totally inconsistent with the exercise of ordinary care by the plaintiff to establish contributory negligence as a matter of law. ■ If on the plaintiff's case the jury could reasonably find that it was more probable, or even equally probable, that plaintiff was not guilty of contributory negligence, the granting of a nonsuit on that ground would be error. This conclusion is arrived at without the aid of the disputable presumption that plaintiff was exercising ordinary care for his own safety. Under the decisions of the Supreme Court, by which we are bound, plaintiffs, having produced no evidence on the subject of Satariano's conduct at and immediately before the time of his injury and being precluded from producing his own testimony on that subject by his loss of memory due to brain concussion, are entitled to the weight of this presumption. (*Westberg* v. *Willde,* 14 Cal. (2d) 360 [94 P. (2d) 590]; *Speck* v. *Sarver,* 20 Cal. (2d) 585 [128 P. (2d) 16]; see *Scott* v. *Sheedy,* 39 Cal. App. (2d) 96 [102 P. (2d) 575], holding expressly that where plaintiff cannot testify because of loss of memory he is entitled to the benefit of the presumption.) We conclude that the evidence did not show contributory negligence as a matter of law.

■ Respondents Sleight say that there was no substantial evidence of their negligence to go to the jury. Disregarding all other evidence, a police officer, who investigated the accident, testified that William R. Sleight, the driver of the automobile, stated to him that he was "looking for a parking place and did not see Anthony Satariano until the car struck him." The testimony of this admission, standing alone, would be enough to take the case to the jury on the question of the driver's negligence. (*Jacobus* v. *Brero,* 190 Cal. 374 [212 Pac. 617]; Code Civ. Proc., § 1832.) ■ William H. Sleight,

who signed the application for a driver's license for his son William R. Sleight (a minor) made no objection to the admission of his testimony. He does not claim on appeal that he is not bound by it, and under the circumstances we need not consider whether if he had made objection the evidence would have been admissible against him. His failure to object amounted to a waiver in any event. (*Powers* v. *Board of Public Works*, 216 Cal. 546, 552 [15 P. (2d) 156].)

On the question of the liability of the San Jose Unified School District the plaintiffs' evidence showed the following facts: On the morning in question Satariano had attended his first class at the Horace Mann School, a block or more from the gymnasium building, and was dismissed from that class two or three minutes late by his teacher, about 9:02 or 9:03 a. m. It was then necessary for him to go to the gymnasium, change his clothes and traverse Seventh Street, the block between Seventh and Eighth Streets and Eighth Street and be at the athletic field by 9:21. Upon arriving at the gymnasium he found that he was late. It was after the bell had rung for the classes to change at 9:05. He and Davis were the last to leave the gymnasium. Being late he asked the two instructors in the gymnasium if he could stay there and play basketball instead of going to the athletic field. "They told me no, to go out on the field . . . To hurry up and get over to the field." He and Davis went into the alley at the side of the gymnasium and started to run. At the point where the alley entered Seventh Street there was no marked crosswalk crossing Seventh Street. It was the habit of the boys in going from the gymnasium to the athletic field to use this alley and cross Seventh Street in a direct line. Somewhat north of the alley there was an entrance to the gymnasium on Seventh Street and in front of this entrance a marked crosswalk across Seventh Street. This was used mostly by the girls. At this marked crosswalk there was also a "traffic sally" but none at the point opposite the alley where the boys were accustomed to cross. Cars were customarily parked diagonally in this block on Seventh Street and there were several so parked on either side of the alley on the day of the accident. Seventh Street in this block carried a considerable load of vehicular traffic. The boys had been crossing Seventh Street at this point between gymnasium and playing field for several years, both walking and running, and the principal of the high school knew this fact.

No sign warning the boys against crossing at this point had ever been placed by the school authorities, no teacher or other person was stationed there to prevent their doing so, and no general rule had been formulated or called to their attention prohibiting the practice or warning them against it. Occasionally when teachers found individual boys crossing at this point they would correct their conduct whenever it was out of line and warn them not to run across the street. No one had ever told Satariano not to walk or run across the street at this point.

This evidence presents the question whether a jury could reasonably find that the high school authorities, knowing that the boys during school hours on their way to a regular class were in the habit of walking and running across a well-traveled street in the middle of a block where there was no marked crosswalk and no sign of any sort to warn automobile drivers of their presence, and with the view of their crossing obstructed by diagonally parked automobiles, were bound in the exercise of ordinary care to take some or any steps for their protection from injury.

It is well settled that the amount of care due to minors increases with their immaturity and consequent heedlessness to danger. (*Shannon* v. *Central-Gaither Union School Dist.,* 133 Cal. App. 124 [23 P. (2d) 769] ; *Brizzolari* v. *Market Street Ry. Co.,* 7 Cal. App. (2d) 246 [46 P. (2d) 783] ; *Hernandez* v. *Murphy,* 46 Cal. App. (2d) 201 [115 P. (2d) 565].) The boy in this case was nearing eighteen, but we should not close our eyes to the fact that even boys of seventeen and eighteen years of age, particularly in groups where the herd instinct and competitive spirit tend naturally to relax vigilance, are not accustomed to exercise the same amount of care for their own safety as persons of more mature years. In *Guyer* v. *Sterling Laundry Co.,* 171 Cal. 761 [154 Pac. 1057], at page 763, the court had this to say of a nineteen-year-old girl at a time when under our law a woman reached her majority at eighteen:

"The time fixed by our law for attaining full legal majority . . . embodies a useful and indeed a necessary declaration of the law, since some time must be named when the individual will become entitled to the full rights of the adult and be charged with his full duties and responsibilities. But the law itself cannot change the facts of existence, and no one

will argue that merely because a girl of eighteen or a boy of twenty-one has attained legal majority they have thus and thereby been endowed with the care and discretion and judgment of full maturity. Physically, they may be fully mature. Mentally, a tremendous growth must take place, and usually does take place, before knowledge has ripened into wisdom, and wisdom coupled with experience has developed a sound and sane judgment. A girl of nineteen is still in her youth. Youth is ever the time of heedlessness, of impulsiveness, and of forgetfulness. Lacking power of continuous application and concentration, it will, upon the other hand, center its thought for a brief time and to its peril upon one matter to the exclusion of all else.''

We entrust the safety of our children to our public school authorities during school hours. They are bound to exercise an amount of care for their safety during that period commensurate with the immaturity of their charges and the importance of their trust. This case, except for the fact that here in going from class to class the children were compelled to cross a public street, is not unlike the case of *Taylor* v. *Oakland Scavenger Co.,* 17 Cal. (2d) 594 [110 P. (2d) 1044]. There the court said at page 600:

''It is the duty of the school authorities to supervise at all times the conduct of the children on the school grounds and to enforce those rules and regulations necessary to their protection. [Citing cases.] The school district is liable for injuries which result from a failure of officers and employees to use ordinary care in this respect.''

It was apparently the view of the trial court that this duty ceased once the child was on a public street, but this overlooks the fact that in going from the gymnasium to the playing field the children were still subject to the school authorities and were merely passing from class to class during the regular hours of school. In a sense the public street under these circumstances became an extension of the school grounds. At least it was incumbent upon the children to cross it daily during regular school hours in going from one class to another. In our judgment the evidence presented a question of fact for the jury as to whether with knowledge of the dangerous practice of a large part of the students in crossing Seventh Street outside of a crosswalk ordinary care for their protection did not require of the school authorities something more than sporadic warnings to individuals and groups in

those accidental instances when teachers happened to be present.

Appellants complain of many rulings of the trial court in excluding evidence offered by them. For the guidance of the court in retrying the case it is sufficient to say that as against the San Jose Unified School District plaintiffs should be allowed full latitude to develop the extent and duration of the practice of the boys in crossing Seventh Street at the point where the injury to Satariano occurred, the knowledge of the school authorities of this practice, the amount of traffic on Seventh Street, and the reasonableness of the time allowed the students between classes to get from the classrooms to the gymnasium, change their clothes and proceed to the athletic field. These matters all have a probative value in determining whether in the exercise of ordinary care the school authorities took proper steps for the protection of the boys enrolled in the high school.

The judgment of nonsuit is reversed as to all defendants.

Spence, J., concurred.

Nourse, P. J. — I concur in the judgment because of the decisions controlling it. But I do not agree with the court-made rule therein culminating in *Speck* v. *Sarver, supra*.

Respondents' petition for a hearing by the Supreme Court was denied October 29, 1942. Edmonds, J., and Traynor, J., voted for a hearing.