[Civ. No. 23534.   First Dist., Div. Two.   May 23, 1967.]

GLADYS R. ROSS, Plaintiff and Respondent, v. J. O. KIRBY et al., Defendants and Appellants.

Edward F. Dullea for Defendants and Appellants.

David D. Ring and Charles Cline Moore for Plaintiff and Respondent.

TAYLOR, J.—Plaintiff, a prospective patron of the restaurant owned by defendants, hereafter Kirby's, recovered damages for personal injuries sustained when she tripped over a drainage berm in a private walkway that served as one of the approaches to the back door of Kirby's from the adjacent public parking lot. On this appeal, the contentions are that defendants were not liable, as a matter of law, and that the court erred in its instructions to the jury.

As there are no contentions concerning the sufficiency of the evidence, a brief summary of the pertinent facts will suffice. On February 19, 1963, plaintiff, a 62-year-old widow, and her coemployee, Mrs. Bess Parker, were on their way to Kirby's for some coffee. Kirby's, owned by defendants, J. O. Kirby, Georgia Kirby, and their partners, George and Susan Martinovich, is located at 4063 Piedmont Avenue in Oakland, in a triangular shaped building fronting on Piedmont Avenue with the point of the triangle at 41st Street and Piedmont Avenue. The back of the restaurant faces a public parking lot operated by the City of Oakland along the entire block between 40th and 41st Streets.

Mrs. Parker left her vehicle in the parking lot and then she and plaintiff walked a direct straight line toward Kirby's back door. When plaintiff was about 3 to 4 feet from the back door of the restaurant and directly in front of it, she tripped and fell over an irregularly shaped asphalt drainage berm that is parallel to the building. Plaintiff had not been to Kirby's before and although she scanned the pavement, she did not see the berm before she fell. Mrs. Parker did not see the berm either. There were no caution or warning signs on the berm. The berm had been painted white by the city to enhance its visibility in 1962, but by the time of plaintiff's fall, the paint had worn off the portion in front of Kirby's back door.

The berm was about 2½ inches high, 4 inches wide and 47 feet long. As the berm ran along the property line, about ½ of its width was on the city's lot and the other half on the adjoining premises of Kirby's. It was the same grey-black

asphalt color as the parking lot and the paved private walkway that ran parallel to the restaurant from 41st Street to Kirby's back door.

The berm had been constructed by the city in July 1962 and was in existence prior to the construction of Kirby's. As there was a gradual natural downward slope from the parking lot to the restaurant, the berm was necessary to prevent drainage into the restaurant. When planning their restaurant, defendants and their partners worked out a general layout and hired an engineer who drew blueprints showing the back door access to Kirby's. The public parking lot was in operation in the fall of 1962 at the time of the construction of Kirby's and defendants knew that the berm was present on the pavement when the restaurant was constructed.

The berm was located about 6 feet from the edge of the parking lot and about 3 feet from Kirby's back door. The door was commonly used by patrons of Kirby's who also utilized the parking lot. The large awning over the back door extended almost the entire 3-foot distance to the berm and, with its large K, extended an invitation to the public to enter. Defendants had never inspected the berm or painted or maintained it prior to plaintiff's fall. Plaintiff and Mrs. Parker testified that Mr. Martinovich had told them at the time of the accident that several other people had fallen over the berm and he admitted this at the trial.

The major contention on appeal is that the trial court erred in submitting the issue of defendants' liability to the jury. Defendants argue that in the absence of statute, a landowner is under no duty to maintain abutting public property in a safe condition. They recognize the exceptions to the rule of nonliability when an abutting owner has altered or constructed the adjacent public property for his own benefit or when the public property has been altered in a particular manner at the request of the owner and for his special benefit.

Defendants argue that they did not engage in any activities on the adjacent public property and that the rule enunciated in *Kopfinger* v. *Grand Central Public Market*, 60 Cal.2d 852 [37 Cal.Rptr. 65, 389 P.2d 529], is not applicable. We cannot agree. In *Kopfinger*, a merchant was held liable for injury to a customer who had slipped on some gristle on the adjacent public sidewalk over which meat was delivered to the market. In rejecting a contention identical to that raised here by defendants, the Supreme Court said at pages 858 and 859:

"This is not a case of a landowner being held responsible for something with which his only connection is the fact of his ownership or use of the abutting land. We are here concerned with a hazard which resulted from activities carried on in the course of defendants' commercial enterprise. The defendants used the sidewalk every day for numerous deliveries. The cases relied upon by defendants involve structural defects in the sidewalk, the repair of which requires capital outlay and is usually done by the municipality, unlike this case, where the dangerous matter could be removed by merely washing down or sweeping the sidewalk, work not usually done by the city. The structural defect cases all recognize that there is liability when the defect is caused by the owner, or when the sidewalk is altered or constructed specially for the benefit of his property and serves a use apart from the ordinary and accustomed use of the sidewalk. (See e.g., *Schaefer* v. *Lenahan,* 63 Cal.App.2d 324 [146 P.2d 929] ; *Sexton* v. *Brooks,* 39 Cal.2d 153 [245 P.2d 496] ; *Peters* v. *City & County of San Francisco,* 41 Cal.2d 419 [260 P.2d 55].)" The court held that the hazard was created in the course of activities connected with the commercial purpose of defendants and there was enough evidence to indicate that defendants knew, or should have known of the hazard, did not remove it within a reasonable time, and that this was a violation of the common law duty to exercise due care.

*Johnston* v. *De La Guerra Properties, Inc.,* 28 Cal.2d 394 [170 P.2d 5], is also in point. In that case, the tenant assumed and exercised control over the means of lighting the side entrance to his restaurant. The court concluded that the tenant had a limited right of control over the approach to the restaurant and a duty to warn his business invitees of a known dangerous condition, even though the approach was outside his leased premises. *Obrien* v. *Fong Wan,* 185 Cal. App.2d 112 [8 Cal.Rptr. 124], cited by defendants, is distinguishable as the danger there, a recessed stairway, unlike the berm here, was obvious and clearly visible.

Here, defendants constructed their restaurant with a back door fronting directly onto the adjoining public parking and only 3 feet from the berm, which was partly on defendants' property. Defendants knew the berm was present and by the location of the back door, invited the general public to enter from the parking lot. Thus, they derived a special benefit apart from the ordinary and accustomed use of the walkway. In addition, it is not questioned that the berm benefited

defendants' property by providing necessary drainage for the downward slope from the parking lot to the restaurant.

Also, there was substantial evidence that the nonvisibility of the berm was caused by defendants' activities. In July 1962 the berm had been painted white by the city in order to enhance its visibility. At the time of the accident, about 6 months later, the portion of the berm in front of Kirby's back door was unpainted, i.e., the paint had worn off, while the paint farther down toward 41st Street was still intact. The logical inference is that the foot traffic from the parking lot to the back door of the restaurant caused the paint to wear off. It is uncontroverted that defendants never attempted to paint any portion of the berm. We conclude that, under the facts here presented, the trial court properly submitted the question of defendants' liability to the jury.

We now consider defendants' contention that the trial court gave several erroneous instructions. The first instruction complained of is set forth below[1] and our previous discussion concerning liability sufficiently indicates its correctness.

■ Defendants argue that the trial court erred in instructing the jury that plaintiff was an invitee, as she was not on their premises or on premises under their control. As indicated above, at least half of the berm was located on the premises of defendants. In addition, they actually assumed and exercised control over the entire portion of the berm in front of their back door by the location of the door and the implied invitation to the public (*Johnston* v. *De La Guerra Properties, Inc., supra*).

■ Finally, defendants, without citation of any authority, argue that the trial court erred in instructing the jury that a general safety order required that permanent passageways should be kept in good repair and, where not properly defined, should be clearly defined by painted lines, curbing or other methods of marking and that if the jury concluded that Kirby's had violated such a safety order, a presumption of negligence arose. As a business invitee, plaintiff was entitled to the benefits of the safety order, and the instruction was

---

[1] "However, the inspection, repair or painting of said berm, the use of the adjoining property in connection with its operation of its own business activities and its own property, or its failure to warn its business invitees of any latent, concealed or not readily apparent dangers of the use of said property in its condition as of February 19, 1963, if, from the evidence, you find any such danger to exist, should be considered by you in determining whether or not the defendant Kirby's Kitchen were negligent in failing to fulfill its duty to the plaintiff Ross, its business invitee, as I shall hereafter define that duty."

correct (*Akins* v. *County of Sonoma,* *(Cal.App.) 55 Cal. Rptr. 785; *Porter* v. *Montgomery Ward & Co., Inc.,* 48 Cal. 2d 846 [313 P.2d 854]).

The order denying the motion for a judgment notwithstanding the verdict is affirmed.

Shoemaker, P. J., and Agee, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 19, 1967.

---

*A hearing was granted on February 15, 1967. The final opinion of the Supreme Court, filed July 28, 1967, is reported in 67 Cal.2d —— [60 Cal.Rptr. 499, 430 P.2d 57].