[No. D005003. Fourth Dist., Div. One. Apr. 22, 1988.]

WILLIAM S. DONNELL et al., Plaintiffs and Appellants, v. CALIFORNIA WESTERN SCHOOL OF LAW et al., Defendants and Respondents.

[black redaction]

---

## COUNSEL

Kevin Quinn, Thorsnes, Bartolotta, McGuire & Padilla, and Suuzen Ty Anderson for Plaintiffs and Appellants.

McInnis, Fitzgerald, Rees, Sharkey & McIntyre, James E. Chodzko, Gilson & Heaton and Virginia R. Gilson for Defendants and Respondents.

---

## OPINION

**KREMER, P. J.**—Plaintiffs William and Nancy Donnell (Donnell) appeal summary judgment favoring defendants California Western School of Law (Cal Western), its security guard Lloyd Liverman and employee Dennis Avery on plaintiffs' complaint for negligence, conscious disregard of safety, negligent infliction of emotional distress and loss of consortium. We affirm the summary judgment.

### I

Donnell's complaint alleged: Cal Western runs a law school at 350 Cedar Street in a San Diego building it owns, possesses and controls. Cal Western provides no parking for its students at or near its law school. On January 30, 1984, Cal Western's library and school grounds were open for student use until midnight. About 10 p.m., Cal Western law student William Donnell left Cal Western's building after studying in its library and headed toward his parked car. While walking along the west side of Cal Western's building, William was attacked, stabbed and injured by an unknown assailant. William called for help, but no security personnel came to his

assistance. Cal Western's building had no exterior lights on its west side. No security guards patrolled the building's west side.

Donnell further alleged: Defendants knew criminal activity had occurred in the immediate area but negligently failed to provide adequate lighting and security around the law school building. Students, including William, going to and from the law school were forced to traverse the dangerous area because Cal Western did not provide parking for its students. Despite knowing about prior criminal activity perpetrated on persons and property around its law school premises, defendants did not warn William of the dangerous conditions, provide adequate security forces or otherwise safeguard law school students from criminal acts.

William sought compensatory damages and punitive damages. His wife Nancy sought damages for loss of consortium.

## II

Defendants sought summary judgment, asserting as a matter of law defendants had no legal duty to protect William from crimes occurring on the public sidewalk. For purposes of defendants' motion, the parties agreed the following facts were undisputed: About 10:30 p.m. on the night of the attack, William left Cal Western's campus to go home. As he left the law school, William headed to his car parked in Cal Western's faculty parking lot. While on the sidewalk at the corner of Third Avenue and Cedar, William heard the sound of broken glass. William's eventual assailant was breaking into a car parked on Third Avenue near the law school building's northwest corner. William jogged 100 feet up to the car. ■ ■ ■ ■ During a struggle, the assailant stabbed William on the sidewalk.[1] Third Avenue has been used by the public for more than five years.

---

[1] We note Donnell presented evidence the assailant chased William around the car and eventually slashed at him while William's back was against a dumpster at the northwest corner of Cal Western's land. At the hearing on defendants' motion for summary judgment, Donnell's counsel argued: "*Low* vs. *City of Sacramento* [(1970) 7 Cal.App.3d 826 (87 Cal.Rptr. 173)], a California Appellate Court case, stated that control is the sense of power to prevent, remedy or guard against dangerous conditions. The factual instances of control in this matter are that the defendants leased and operated the dumpster that William was stabbed while leaning up against . . . ." Donnell's appellate briefs do not assert any issue specifically involving the dumpster as the basis for Cal Western's alleged liability. Instead, Donnell contends Cal Western had a duty to exercise control over the city-owned sidewalk to prevent injury to its students there. In any event, Donnell identifies no evidence reasonably connecting the dumpster itself to the genesis of the assault or the cause of his injuries. Further, the mere presence of the dumpster did not constitute control by Cal Western of the entire city-owned sidewalk adjoining its building. (Cf. *Low* v. *City of Sacramento* (1970) 7 Cal.App.3d 826 [87 Cal.Rptr. 173].)

After hearing, the court granted defendants' motion for summary judgment. The court held Cal Western had no duty to protect William from criminal assault on the sidewalk bordering its building. Donnell appeals, contending Cal Western's two "coexisting" special relationships with William—the school-student special relationship and the landholder-business invitee relationship—required Cal Western to take reasonable, inexpensive measures to protect him from foreseeable criminal assault on the city-owned sidewalk bordering the school. We disagree.

## III

"In considering whether one owes another a duty of care, several factors must be weighed including among others: ' "[T]he foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." ' [Citations.]" (*Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 806 [205 Cal.Rptr. 842, 685 P.2d 1193].)

Generally a person does not have a duty to control another's conduct or to warn those who may be endangered by such conduct. However, a duty may arise where a special relationship exists giving rise to a right to such protection. (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 806.)

## IV

We decline to extend principles of law arising out of the school-minor student relationship (*Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 513 [150 Cal.Rptr. 1, 585 P.2d 851]; *Raymond* v. *Paradise Unified School Dist.* (1963) 218 Cal.App.2d 1, 10 [31 Cal.Rptr. 847]; *Satariano* v. *Sleight* (1942) 54 Cal.App.2d 278, 283-284 [129 P.2d 35]) to impose on Cal Western a duty to insure its adult students' safety once they have left Cal Western's premises. Mature students are generally considered business invitees. (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at pp. 806, fn. 3, 808-809; cf. *Satariano* v. *Sleight, supra,* 54 Cal.App.2d 278, 283: "[T]he amount of care due to minors increases with their immaturity and consequent heedlessness to danger.") Further, nothing in the record suggests Cal Western voluntarily assumed a duty to protect its students from criminal acts outside its premises.

(*Davidson* v. *City of Westminster* (1982) 32 Cal.3d 197, 206 [185 Cal.Rptr. 252, 649 P.2d 894], citing *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6 [120 Cal.Rptr. 5].)

## V

■ A right to protection from the dangerous conduct of another may arise from the special relationship between a landholder and its invitees. (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 806.) ■ Thus, the issue here is the extent of Cal Western's premises liability to its invitee William.

■ "A defendant cannot be held liable for the defective or dangerous condition of property which it [does] not own, possess, or control. Where the absence of ownership, possession, or control has been unequivocally established, summary judgment is proper." (*Isaacs* v. *Huntington Memorial Hospital* (1985) 38 Cal.3d 112, 134 [211 Cal.Rptr. 356, 695 P.2d 653].)

■ Donnell contends Cal Western had a duty to take reasonable steps to protect its invitees from foreseeable criminal assaults on sidewalks giving immediate access to its building. Donnell seeks to hold Cal Western liable for a dangerous condition of a city-owned sidewalk adjoining Cal Western's property, asserting Cal Western had the power to "control" the sidewalk by placing lights on its own building to shine on the sidewalk. Donnell also asserts Cal Western should perhaps have mounted exterior monitors on its building walls to permit its students to view the dangerous area before traversing it. However, Donnell attempts to expand the principle of "control" of property to include situations where an adjoining landowner merely has the ability to influence or affect such property. Donnell in effect attempts to hold Cal Western responsible for the dangerous condition of "something with which [its] only connection is the fact of [its] ownership or use of the abutting land." (*Kopfinger* v. *Grand Central Pub. Market* (1964) 60 Cal.2d 852, 858 [37 Cal.Rptr. 65, 389 P.2d 529]; *Ross* v. *Kirby* (1967) 251 Cal.App.2d 267, 270 [59 Cal.Rptr. 601].) The law of premises liability does not extend so far as to hold Cal Western liable merely because its property exists next to adjoining dangerous property and it took no action to influence or affect the condition of such adjoining property.

## A

In *Kopfinger* v. *Grand Central Pub. Market, supra,* 60 Cal.2d 852, as a result of the defendant merchant's business operation, meat fell to the sidewalk in the course of defendant's activities rendering the walkway dangerous to pedestrians. In reversing a nonsuit, the court held the defendant

could be held liable because its business activities *affirmatively* created a dangerous physical condition on the adjacent public sidewalk which was not timely remedied by the defendant. The court specifically distinguished the "numerous cases to the effect that in the absence of statute there is no common-law duty on the occupant of land abutting a sidewalk to repair or maintain the sidewalk." (*Id.* at p. 858.) Unlike the plaintiff in *Kopfinger,* Donnell has presented no evidence Cal Western's business activities affirmatively created a dangerous physical condition on the city-owned sidewalk.

## B

In *Ross* v. *Kirby, supra,* 251 Cal.App.2d 267, the court affirmed an order denying defendants' motion for judgment notwithstanding the verdict. Plaintiff prospective customer tripped on a drainage berm in a private walkway serving as one of the approaches to defendants' restaurant. Defendants had built the restaurant with its back door fronting directly onto an adjoining public parking lot and three feet from the berm which was partly on defendants' property. Defendants invited the public to enter from the parking lot, thus deriving "a special benefit apart from the ordinary and accustomed use of the walkway." (*Id.* at p. 270.) The berm benefited defendants' property by preventing drainage into their restaurant. Further, defendants' activities caused the berm's nonvisibility. The decision in *Ross* was consistent with structural defect cases recognizing "liability when the defect is caused by the owner, or when the sidewalk is altered or constructed specially for the benefit of his property and serves a use apart from the ordinary and accustomed use of the sidewalk. [Citations.]" (*Ibid.*) Unlike the plaintiff in *Ross,* Donnell has presented no evidence Cal Western caused a dangerous physical condition on the city-owned sidewalk and no evidence the sidewalk was modified or built specifically to benefit Cal Western's property or served a use apart from its ordinary and accustomed use.

## C

In *Johnston* v. *De La Guerra Properties, Inc.* (1946) 28 Cal.2d 394 [170 P.2d 5], the court reversed a judgment of nonsuit favoring a defendant restaurant owner. Plaintiff prospective customer was injured on a portion of the landlord's property not within the premises leased by the defendant. The court noted a "tenant ordinarily is not liable for injuries to his invitees occurring outside the leased premises on common passageways over which he has no control. [Citations.]" (*Id.* at p. 401.) However, "if the tenant *exercises control* over a common passageway outside the leased premises, he may become liable to his business invitees if he fails to warn them of a dangerous condition existing thereon." (*Ibid.,* italics added.) The court

noted there was evidence the defendant tenant *"assumed some responsibility for, and exercised control over,* the means of lighting the approaches to the side entrance to the [landlord's] building." *(Ibid.,* italics added.) The defendant installed on the outside wall of the building a neon sign identifying his restaurant. The neon sign was connected to a single light immediately above the side door to the building and illuminated the general area of the passageway as well as serving as an invitation to use such entrance way to the restaurant. The court found the evidence would support a finding the defendant "had a limited *right of control* over this portion of the premises and of the means of illuminating the entranceway, that he knew of the danger involved in using this approach at night, and that he negligently failed to warn plaintiff, a business invitee, of the dangerous condition." *(Ibid.,* italics added.) Thus, the court held the defendant could be held liable because with the landlord's apparent acquiescence he took affirmative steps to assume responsibility for lighting the common passageway and exercised a limited right of control over such portion of the premises. Once the defendant undertook such responsibilities, he was required to discharge such assumed responsibilities with due care. Unlike the plaintiff in *Johnston,* Donnell presented no evidence Cal Western had any right to control the city-owned sidewalk where Donnell was assertedly injured. At most Cal Western merely had the ability to influence or affect the condition of the city's property. Further, Donnell presented no evidence Cal Western assumed any responsibility for or exercised control over the means of lighting the city-owned sidewalk where Donnell was injured. Indeed, Donnell asserts Cal Western should be liable precisely because it did not assume responsibility over the city-owned sidewalk.

### D

Donnell's heavy reliance on *Schwartz* v. *Helms Bakery Limited* (1967) 67 Cal.2d 232, 235 [60 Cal.Rptr. 510, 430 P.2d 68], is misplaced. In *Schwartz* the court reversed a judgment of nonsuit, holding that by undertaking to direct a child to an assigned rendezvous with a doughnut truck the defendants assumed a duty to exercise due care for the child's safety. In discussing earlier cases involving premises liability, the court stated: "The physical area encompassed by the term 'the premises' does not, however, coincide with the area to which the invitor possesses a title or a lease." *(Id.* at p. 239.) However, this language in *Schwartz* did not expand the law of premises liability beyond those premises owned, possessed or controlled by the defendant. Instead, such language was merely part of the court's summary of earlier cases involving premises liability, specifically including *Kopfinger* v. *Grand Central Pub. Market, supra,* 60 Cal.2d 852, *Ross* v. *Kirby, supra,* 251 Cal.App.2d 267, and *Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394. The court in *Schwartz* stated the "premises" may

be greater than the invitor's property: "The premises may include such means of ingress and egress as a customer may reasonably be expected to use. The crucial element is *control*." (*Schwartz* v. *Helms Bakery Limited, supra,* at p. 239, italics added.) The court then quoted from *Johnston*: " 'It is clear . . . that if the tenant exercises control over a common passageway outside the leased premises, he may become liable to his business invitees if he fails to warn them of a dangerous condition existing thereon.' (*Johnston* v. *De La Guerra Properties, Inc., supra,* 28 Cal.2d 394, 401 [170 P.2d 5].)" (*Ibid.*) Citing *Kopfinger* and *Ross,* the court then stated: "An invitor bears a duty to warn an invitee of a dangerous condition existing on a public street or sidewalk adjoining his business which, because of the invitor's special benefit, convenience, or use of the public way, creates a danger." (*Id.* at pp. 239-240.)

The court in *Schwartz* also emphasized it was applying established premises liability law to the unique facts before it involving the mobile doughnut truck: "It may be argued that defendants, as business invitors, cannot incur a duty to protect invitees from injury on a public street. We have pointed out, however, that the jury could have found that the dangerous circumstances which caused the injury were *created* by defendants. Moreover, the authorities we have cited above show that the concept of 'business premises' may no longer be mechanically defined by the geographical area in which the invitor holds a property interest. An invitor may be liable for an injury, whether it occurs on his property or on a common passageway or on an adjacent sidewalk or street being used for his special benefit, if, and only if, the injury is caused by a dangerous condition, or unreasonable risk of harm, within the invitor's *control*. [Citation.]

"Defendants' business consisted of selling bakery goods from a truck. In coming to the truck for the convenience of defendants, patrons used the public streets and sidewalks as means of access for the special benefit of defendants' business. Defendants may therefore be held liable for an injury occurring to their customer in the immediate vicinity of the truck if the circumstances causing the injury are within the range of defendants' *reasonable supervision and control.* Obviously, defendants are not insurers for all accidents occurring in areas through which their truck passes. They may not be held liable, for example, for a fall caused by an unobserved defect in a sidewalk next to which their truck stops. They may be responsible, however, for harm occurring in the immediate vicinity of the truck, wherever it may be stopped at a given time, if the harm is of the kind that defendants could have prevented by exercising reasonable care for the safety of their customers." (*Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d at p. 243, fn. 10, italics added.)

E

Donnell also relies on *Frances T.* v. *Village Green Owners Assn.* (1986) 42 Cal.3d 490 [229 Cal.Rptr. 456, 723 P.2d 573, 59 A.L.R.4th 447] and *O'Hara* v. *Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798 [142 Cal.Rptr. 487]. However, those cases do not help Donnell.

*Frances T.* v. *Village Green Owners Assn., supra,* 42 Cal.3d 490, involved the special relationship between a condominium owner and the condominium homeowners association not present here. The plaintiff alleged she was raped in her unit after the association required her to remove exterior lighting not complying with the association's covenants, conditions and restrictions. Plaintiff also alleged the association breached its duty to improve the lighting in common areas outside her unit. Permitting the plaintiff owner to proceed on a negligence cause of action against the association, the court held with respect to the project's common areas the association "owed plaintiff the same duty of care as would a landlord in the traditional landlord-tenant relationship." (*Id.* at p. 498.)

*O'Hara* v. *Western Seven Trees Corp., supra,* 75 Cal.App.3d 798, involved a landlord-tenant relationship not involved here. Alleging she was raped in her apartment, plaintiff tenant sued her landlord for not providing adequate security and not warning her of the danger of rape. The court held the plaintiff had stated a cause of action. The court noted "the landlord-tenant relationship, at least in the urban, residential context, has given rise to liability under circumstances where landlords have failed to take reasonable steps to protect tenants from criminal activity. [Citations.] It has been held that since *only the landlord is in the position to secure common areas,* he has a duty to protect against types of crimes of which he has notice and which are likely to recur if the common areas are not secure." (*Id.* at pp. 802-803, italics added.) Cal Western's position was unlike the landlord's in *O'Hara.* Here the city could remedy any dangerous condition of its sidewalk.

F

Donnell's asserted premises liability case against Cal Western fails under the analysis of *Steinmetz* v. *Stockton City Chamber of Commerce* (1985) 169 Cal.App.3d 1142 [214 Cal.Rptr 405]. In a case involving "a landowner's liability for a criminal assault by a third person upon an invitee which occurs off the landowner's premises," the court in *Steinmetz* affirmed summary judgment favoring defendant tenant. (*Id.* at p. 1144.) The court found "the record establishes without question the decedent was murdered off the premises leased by [defendant tenant] on property not within the possession or control of [defendant tenant], but rather on the premises of another

tenant in the industrial park. . . . Plaintiffs have not cited nor are we aware of any case where a *landowner* was held responsible for injuries to an invitee from criminal activity occurring off the landowner's premises." (*Id.* at p. 1146, italics in original.) Discussing *Schwartz* v. *Helms Bakery Limited, supra,* 67 Cal.2d 232, the court stated *Schwartz's* "elastic concept of business premises is uniquely appropriate to the vendor whose commercial activities are conducted from a mobile vehicle at shifting locations on the public streets. However, we know of no decision which has applied this standard to one whose business is conducted on private property in a fixed location. Indeed, it is difficult to perceive how such a rule could be fashioned." (*Steinmetz* v. *Stockton City Chamber of Commerce, supra,* at p. 1146.)

Generally, "a landowner has no right to control and manage premises owned by another." (*Steinmetz* v. *Stockton City Chamber of Commerce, supra,* 169 Cal.App.3d at p. 1147.) In *Steinmetz* the court concluded there was no factual basis to find any duty of care to the decedent while the decedent was on premises not owned, possessed or controlled by defendant. The court noted defendant tenant had no right to station security guards on premises it did not own or control, no right to place lighting in a parking area other than its own, and no right to control the activities of their invitees or third parties occurring off premises owned, possessed or controlled by defendant. Here Donnell has presented no evidence Cal Western had any right to control or manage the city-owned sidewalk.

## G

In considering whether Cal Western owed a duty to William under the circumstances here, one factor to be weighed is " ' "the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach." ' " (*Peterson* v. *San Francisco Community College Dist., supra,* 36 Cal.3d at p. 806.) Accepting Donnell's contention Cal Western should have placed lighting and monitors on its building to influence or affect the condition of the adjoining city-owned sidewalk would go beyond the limits of any existing case law and would impose an undefinable scope of duty upon landowner Cal Western. (*Steinmetz* v. *Stockton City Chamber of Commerce, supra,* 169 Cal.App.3d at p. 1147.) Depending on location, building configurations and technology, Cal Western may have the potential to influence or affect the condition of adjoining property or property at various distances from its own property. However, the existing legal standard does not require Cal Western to seek to exert such influence or effect wherever it may have such potential. Instead, premises liability is based on ownership, possession or control. The

mere possibility of influencing or affecting the condition of property owned or possessed by others does not constitute "control" of such property.

The existing standard for premises liability, based on ownership, possession or control, provides predictability and reasonably clear limits. Such limits on premises liability are also consistent with the general policy underlying much of tort law. Although persons may be liable for injuries occurring under various circumstances on property under their control or for actively putting others in peril elsewhere, absent specific statutory requirements persons generally have no duty (and indeed often no right) to attempt to prevent any possible injury which may occur on another's property.

Cal Western has established the absence of ownership, possession or control of the property where Donnell was injured. Summary judgment favoring Cal Western was proper. (*Isaacs* v. *Huntington Memorial Hospital, supra,* 38 Cal.3d at p. 134; *Steinmetz* v. *Stockton City Chamber of Commerce, supra,* 169 Cal.App.3d at pp. 1145-1147.)

### DISPOSITION

The judgment is affirmed.

Scherer, J.,* concurred.

**WIENER, J.,** Dissenting.—My disagreement with the majority is at two levels. The first is the analytic process through which they reach their conclusion. The second is the conclusion itself. I am far more concerned with the former than the latter. The judicial determination of tort liability should rest on objective principles, principles which I believe are absent in the majority opinion. I would be far less concerned if the majority had simply said that Cal Western acted reasonably or that its negligence was not the legal cause of Donnell's injuries (see *Lopez* v. *McDonald's* (1987) 193 Cal.App.3d 495 [238 Cal.Rptr. 436]). To say, however, that Cal Western had no duty to Donnell ignores both well-established precedent and the undisputed facts.

The importance of our difference of opinion cannot be overstated. Judicial rejection of the fundamental principle expressed in Civil Code section 1714 that all persons are responsible for injuries caused by their negligence requires an evaluation of a number of policy considerations. (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) These factors include "the foreseeability of harm to the

---

*Assigned by the Chairperson of the Judicial Council.

plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved." (*Id.* at p. 113.)

In an effort to avoid the application of these well-recognized factors the majority offer a semantic explanation stating that "Cal Western merely had the ability to *influence* or *affect* the condition of the City's property." (Maj. opn. p. 722, italics added.) By definition there is no meaningful difference between "influence" and "affect" and the concept of control.[1]

The reason the majority do not rely on the policy considerations described in *Rowland* v. *Christian* should be obvious. Every factor guiding judicial resolution of this issue favors a finding of duty in this case.

The assault on Donnell was foreseeable in light of the known incidence of crime in the area including a recent assault on a law school employee a few feet from where Donnell was attacked. Donnell suffered harm in the form of stab wounds, surgery, pain and suffering, medical bills and lost wages as a result of the attack. "That a mugger thrives in dark public places is a matter of common knowledge." (*Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484, 488 [135 Cal.Rptr. 296].) It is therefore reasonable to conclude there was a connection between Cal Western's failure to provide the requested lighting and the harm suffered by Donnell. The policy of preventing future harm would be served by imposing liability on Cal Western. The economic burden of installing exterior lighting on the Third Avenue side of the law school building was minimal; testimony also indicated video monitors could be installed at a modest price. There is little question insurance is commonly available for the type of injury suffered by Donnell. With respect to the question of moral blame, it is perhaps an indictment of our litigation-minded society that a law school repeatedly rejected its employees' and students' requests for increased lighting and other security measures in the face of known risk of criminal assault because of nominal expense and the danger the school would be assuming liability if lights were installed.

Control is only one part—a small part—of the duty analysis required in the determination of premises liability. Obviously control can play a more

---

[1] "Control" means "[t]o exercise authority or dominating influence over; direct; regulate." (The American Heritage Dict. of the English Language (New College ed. 1981) p. 290.) "Influence" is "[t]o have power over; affect." (*Id.* at p. 674.)

significant role in cases where implicit in the absence of control is the notion that people can not be expected to take action where they are, in fact, powerless. In other words, we could not expect Cal Western to fix the sidewalk adjacent to buildings two blocks away from the law school entrance even though students routinely use those sidewalks. "Control" in that situation is nothing more than a conclusionary way of saying that we do not impose impossible burdens on people. Here Cal Western makes no claim it is powerless to improve the lighting. It did, in fact, install the requested lighting shortly after the assault on Donnell.

Lack of control may also be relevant to the duty analysis in those cases in which the costs associated with making the premises tort-proof are prohibitive. If the only way to improve the safety of students here was to install an expensive radar device complete with electronic sensors, the cost might well outweigh the benefits to be served by such a device and the extension of tort liability might involve an increase in the cost of legal education with its resultant effect on society. However, Cal Western does not say exterior lighting was too expensive. At most a finding of no control eliminates one of several factors to be considered in establishing duty in the first place.

Here the majority's failure to explain its implied conclusion no duty was owed gives little assistance to those legitimately concerned with how the respective societal costs are objectively balanced in the decisional process. If anything, the failure to sharply define and examine the significant policy considerations which may underlie the majority's conclusion increases the popular perception that tort liability—or limitation thereof—is based on nothing more than the individual subjective responses of judges that tort liability should be expanded or decreased. This is why the California Supreme Court has repeatedly cautioned lower courts about the confusing and misleading nature of the duty analysis. "The assertion that liability must . . . be denied because defendant bears no 'duty' to plaintiff 'begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct. . . . [Duty] is a shorthand statement of a conclusion, rather than an aid to analysis in itself. . . . [I]t should be recognized that "duty" is not sacrosanct in itself, but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection.' " (*Dillon* v. *Legg* (1968) 68 Cal.2d 728, 734 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316], quoting Prosser, Law of Torts (3d ed. 1964) at pp. 332-333.)

The majority opinion also ignores the facts of this case. Here Cal Western not only controlled the means of installing lighting over the approaches to the law school by virtue of its ownership of the building, but had, in fact,

exercised control over the approaches through lighting and other means in the past. The law school is situated in a large building which occupies an entire city block. The building is bordered on three sides by the city sidewalks along Third Avenue on the west, Fourth Avenue on the east, and Cedar Street on the south. The north side of the building abuts a freeway right-of-way. Cal Western illuminated the law school entrance with small floodlights attached to the building. There were also two gas lamp poles on the Cedar Street sidewalk in front of the school which the business manager testified were owned and maintained by Cal Western. The back of the building was sealed off with security gates to discourage transients. The west side where Donnell was attacked was the darkest side of the building. As noted, Cal Western exercised its limited right of control over that portion of the approach to the law school by installing lighting shortly after the January 1984 attack "to increase visibility out there at night."

Cal Western also exercised its limited right of control over the sidewalks approaching the law school by instructing security personnel as early as 1978 to escort persons to their cars after dark on request because of the nature of the neighborhood. "If it was a student that had a parking place, then they would go to the parking lot. If it was a student that had parked on the street, then they would have to go to the car." Dean Avery observed the security personnel kept the front door of the law school in view when providing the escort service. The guard stayed on the Cedar Street sidewalk "watching the woman go out to her car and get in and drive away and then coming back to the building." The majority assertion Cal Western did not assume responsibility for or exercise at least limited control over the approaches to the law school building, including the city-owned sidewalk where Donnell was injured, is factually incorrect.

Based on the foregoing I would reverse the judgment.

Appellants' petition for review by the Supreme Court was denied July 28, 1988.