Filed 11/27/13  Qu v. Univ. of So. Cal. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| WANZI QU et al., | B247933 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC484543) |
| v. | |
| UNIVERSITY OF SOUTHERN CALIFORNIA, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael M. Johnson, Judge.  Affirmed.

Alan Burton Newman, Alan Burton Newman and Sigalit Shoghi for Plaintiffs and Appellants.

Gibson, Dunn & Crutcher, Debra Wong Yang, Kahn A. Scolnick, Ross Halper and Jennifer E. Rosenberg for Defendant and Respondent.

Plaintiffs and appellants Wanzi Qu, Xiaohong Fei, Xiyong Wu and Meinan Yin (collectively, plaintiffs) appeal from a judgment in favor of defendant and respondent University of Southern California (USC) following the trial court's sustaining of USC's demurrer to the second amended complaint without leave to amend. Plaintiffs contend that the trial court erred in concluding that their complaint did not allege facts showing that USC was liable for negligence and fraud. We disagree and affirm.

*FACTUAL AND PROCEDURAL BACKGROUND*

On April 11, 2012, Ming Qu and Ying Wu, two graduate students from China who attended USC, were killed during a robbery "in the neighborhood surrounding of USC." The decedents were killed in an area adjacent to campus where USC did not provide security but only a " 'quick response' " service. USC did provide security in other areas of the neighborhood which USC called the " 'patrolled area.' " On May 16, 2012, Qu's parents and Wu's parents filed a complaint against USC alleging wrongful death based on negligence, negligent misrepresentation, and intentional misrepresentation.

The complaint alleged that the decedents were killed in the "quick response area" near the campus, and that USC provided security in other areas adjacent to the campus through "showing a police presence, 'security and license plate recognition cameras, uniformed officers, and yellow jacketed security ambassadors.' " USC was alleged to have breached its duty of care to the decedents "by not providing security; by not warning them it was in a high crime area; and by misleading them into thinking it was

2

safe to live and go into the area." The complaint also alleged that USC made misrepresentations about the school's safety on its website.

USC demurred to each cause of action alleged, and plaintiffs filed an amended complaint. The first amended complaint asserted wrongful death based on the same theories, and alleged that USC represented to its graduate students that it had established both a "quick response zone" and a "patrolled zone" in the neighborhoods surrounding campus. Plaintiffs further alleged that USC only provided security on campus and in the "patrolled zone," even though the "additional cost" of providing security in the "quick response zone" would have been " ' de minimus;' " that "USC law enforcement services have not been effective in deterring crime in the patrolled area;" and that "USC knows that the only effective way it can protect its students is by providing housing on campus which is surrounded by high walls and patrolled by armed security guards and the Los Angeles Police Department." USC was alleged to have breached its duty of care to the decedents by not providing security in the quick response area.

USC demurred to each cause of action, and the court sustained the demurrer with leave to amend. Plaintiffs filed a second amended complaint again alleging wrongful death based on negligence, negligent misrepresentation, and intentional misrepresentation. The second amended complaint alleged that USC stated on its website that (1) it was " 'ranked among the safest of U.S. universities and colleges, with one of the most comprehensive, proactive campus and community safety programs in the nation,' " and (2) that " 'USC Public Safety Officers provide 24-hr law enforcement services on the University Park and Health Sciences campuses, as well as in

3

surrounding neighborhoods.' " These statements were allegedly "conveyed by way of [USC's] website which the overseas graduate students accessed when applying for the school." Plaintiffs alleged that these representations were false because "USC is not ranked among the safest of U.S. universities and colleges," "USC does not have one of the most comprehensive, proactive campus and community safety programs in the nation," and "USC Public Safety Officers do not provide twenty four hour law enforcement services in surrounding neighborhoods."

The second amended complaint further alleged that "USC had a legal duty to its students to provide twenty four hour law enforcement services because it made that representation to USC students on its website," that "USC breached it[s] duty of care to its students by not providing the twenty four hour law enforcement services," and that "[t]he breach of such duty was a legal or proximate cause of the harm to Ming Qu and Ying Wu because it was foreseeable to USC that the risk of violent crime against the students without the twenty four hour law enforcement services, was much higher."

USC demurred to each cause of action, and the court sustained the demurrer without leave to amend on the following grounds: (1) the second amended complaint "fails to allege any facts to support the existence of a voluntary duty, or any duty at all"; (2) plaintiffs "fail[] to explain how USC's [alleged negligent] conduct caused the deaths of Qu and Wu"; (3) "[p]laintiffs have provided no detail as to how the statements are false"; and (4) the second amended complaint's "conclusional allegation[]" that "but for USC's representations Qu and Wu would not have enrolled at the university, their parents would not have let them enroll at the university, and [Qu] and [Wu] would not

4

have been murdered" was insufficient to show a causal connection between the alleged misrepresentations and the deaths of Qu and Wu. Plaintiffs timely appealed.

## *CONTENTIONS*

Plaintiffs contend that the court erred in sustaining the demurrer because they adequately pled facts showing that (1) USC had a legal duty to "protect" the decedents, (2) USC's failure to provide security to the area where the decedents were killed was the legal cause of their death, (3) the statements on USC's website were false, and (4) those misrepresentations proximately caused the death of the decedents.

## *DISCUSSION*

### 1. *Standard of Review*

When reviewing a judgment dismissing a complaint after the court sustains a demurrer, we assume the truth of the complaint's properly pleaded or implied factual allegations, and also consider judicially noticeable matters. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We review de novo whether the complaint alleges facts sufficient to state a cause of action. (*Farm Raised Salmon Cases* (2008) 42 Cal.4th 1077, 1089, fn. 10.)

### 2. *The Court Properly Sustained the Demurrer as to the Negligence Claims*

#### a. *Plaintiffs Did Not Allege Facts Showing That USC Had a Legal Duty*

A defendant is liable for negligence where it breaches a duty to the plaintiff and that breach is the legal cause of the plaintiff's injury. (*Nola M. v. University of Southern California* (1993) 16 Cal.App.4th 421, 426 citing Rest.2d Torts, § 281.) The

5

existence of a duty is a question of law. (*Ibid*.) "Ordinarily, there is no duty to protect others from third party criminal activity." (*Ericson v. Federal Express Corp.* (2008) 162 Cal.App.4th 1291, 1300.) However, such a duty may be found where the defendant has a special relationship with the plaintiff. (*Crow v. State of California* (1990) 222 Cal.App.3d 192, 208.)

California courts have generally refused to find that schools owe a duty to protect adult students from third party criminal conduct. (See *Donnell v. California Western School of Law* (1988) 200 Cal.App.3d 715, 719 ["We decline to extend principles of law arising out of the school-minor student relationship [citations] to impose on Cal Western a duty to insure its adult students' safety once they have left Cal Western's premises."]; *Crow v. State of California, supra,* 222 Cal.App.3d at p. 209 [holding that the school had no legal duty to protect a college student from an on-campus assault by another student because the school "could 'not have prevented this incident from taking place except *possibly* by posting guards in each dorm room on a 24-hour, 365-day per year basis.' "])

However, "a duty may be created or assumed where a person who otherwise has no duty to act 'undertakes to come to the aid of another.' " (*Rotolo v. San Jose Sports & Entertainment, LLC* (2007) 151 Cal.App.4th 307, 337.) Under the "negligent undertaking" doctrine, "a volunteer who, having no initial duty to do so, undertakes to provide protective services to another, will be found to have a duty to exercise due care in the performance of that undertaking if one of two conditions is met: either (a) the volunteer's failure to exercise such care increases the risk of harm to the other person,

6

or (b) the other person reasonably relies upon the volunteer's undertaking and suffers injury as a result. [Citations.]" (*Delgado v. Trax Bar & Grill* (2005) 36 Cal.4th 224, 248-249.)

Here, although plaintiffs do not invoke this doctrine by name, they argue that USC voluntarily assumed a duty to provide 24-hour law enforcement services in the neighborhoods surrounding the campus when it made the alleged representations about safety and security on its website. According to the second amended complaint, USC stated on its website that it provided "24-hour law enforcement services" on-campus and "in surrounding neighborhoods." However, allegations contained within the original and first amended complaints expand upon these representations. Although, when reviewing a judgment dismissing a complaint after the court sustains a demurrer, we generally rely on the facts as alleged in the pleading to which the demurrer was sustained, where a plaintiff omits facts pled in an earlier complaint, we may take judicial notice of those complaints. (*Holland v. Morse Diesel Intern., Inc.* (2001) 86 Cal.App.4th 1443, 1447, superseded by statute on other grounds as stated in *White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 521.) Here, according to the allegations in the original and first amended complaints, USC represented to its graduate students that the area where Qu and Wu were killed was a "quick response zone" where no security services were provided, and that other parts of the neighborhood surrounding USC were "patrolled areas" where security services *were* provided. Therefore, according to plaintiffs' allegations, USC represented to the decedents that it did not provide security services in the area where they were killed, but only provided a "quick response"

7

service.  In fact, the original complaint alleged that USC did provide the promised security services in the "patrolled areas" where it advertised it would.  Therefore, plaintiffs did not allege facts showing that USC undertook to provide security services in the area where the decedents were killed, or, as a result, that they had a duty to do so.

b. *Plaintiffs Did Not Allege Facts Showing a Causal Connection Between USC's Alleged Negligence and the Death of the Decedents*

There were also insufficient allegations showing that USC's alleged breach of its duty to the decedents was the legal cause of their death.  " '[I]n order that a negligent actor shall be liable for another's harm, it is necessary not only that the actor's conduct be negligent toward the other, but also that the negligence of the actor be a legal cause of the other's harm.' [Citation.] 'Legal cause' exists if the actor's conduct is a 'substantial factor' in bringing about the harm and there is no rule of law relieving the actor from liability. [Citations.]" (*Nola M. v. University of Southern California, supra,* 16 Cal.App.4th at p. 427.)

Generally, a causal connection between the negligence and injury suffered is " 'accomplished by implication from the juxtaposition of the allegations of wrongful conduct and harm.  [Citation.]  However, where the pleaded facts of negligence and injury do not naturally give rise to an inference of causation the plaintiff must plead specific facts affording an inference the one caused the others.'  [Citation.]" (*Christensen v. Superior Court* (1991) 54 Cal.3d 868, 900-901.)

Here, the second amended complaint only made the conclusory allegation that USC's failure to provide "twenty four hour law enforcement services" in "the area

8

surrounding the University" caused "harm" to the decedents because "it was foreseeable to USC that the risk of violent crime against the students without the twenty four hour law enforcement services, was much higher." This allegation does not naturally give rise to an inference that such nonfeasance caused the decedents to be killed by third parties.

Furthermore, there were no specific facts alleged showing causation. Plaintiffs did not allege that the assailants would not have attacked the decedents had "law enforcement services" been employed, only that, in general, there was a risk of increased violent crime. In fact, in the first amended complaint, plaintiffs alleged that "the only effective way [USC] can protect its students is by providing housing on campus which is surrounded by high walls and patrolled by armed security guards and the Los Angeles Police Department," and that (2) "USC law enforcement services have not been effective in deterring crime in the patrolled area." These allegations suggest that had USC provided security services in the area where Qu and Wu were killed, this still would not have prevented the attack upon them. Accordingly, the trial court properly sustained the demurrer to the negligence causes of action on the grounds that plaintiffs' allegations did not afford the inference that USC's failure to provide security services was the legal cause of the decedents' deaths.

3. *The Court Properly Sustained the Demurrer as to the Misrepresentation Causes of Action*

a. *Falsity Was Not Pled With Specificity*

To state a cause of action for intentional misrepresentation, the plaintiff must plead facts showing " '(a) misrepresentation . . . ; (b) knowledge of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.' " (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 638.) The elements of a negligent misrepresentation claim are similar except "in a claim for negligent misrepresentation, the plaintiff need not allege the defendant made an intentionally false statement, but simply one as to which he or she lacked any reasonable ground for believing the statement to be true. [Citations.]" (*Charnay v. Cobert* (2006) 145 Cal.App.4th 170, 184.) When alleging fraud, "general and conclusory allegations [will] not suffice," rather, each element "must be pled specifically." (*Lazar v. Superior Court, supra,* 12 Cal.4th at p. 645.)

Here, the second amended complaint's intentional and negligent misrepresentation claims were based on USC's representations that (1) it was ranked among the safest of universities and colleges, (2) it had "one of the most comprehensive proactive campus and community safety programs in the nation," and (3) it provided 24-hour law enforcement services on campus and "in surrounding neighborhoods." The court sustained USC's demurrer on the grounds that plaintiffs "provided no detail as to how the statements are false," but simply "allege[d] that USC's statements were false by simply inserting the word 'not' in front of each representation."

10

Plaintiffs now contend only that "since the neighborhood surrounding USC is in a high crime area, it is not true as Respondent claims that USC is 'ranked among the safest of US universities and colleges.' "[1] Plaintiffs have still not pointed to any alleged facts pertaining to USC's ranking in relation to other schools. That the neighborhood surrounding USC has a high crime rate does not suggest that USC's representation that some third party ranked it as a relatively safe school is inaccurate, only that the ranking itself may be inaccurate. Therefore, plaintiffs have not shown that USC misrepresented its ranking. As the second amended complaint does not allege any facts supporting the allegation that USC's representations were false, the demurrer was properly sustained on this ground.

     b.     *Plaintiffs Did Not Allege Facts Showing a Causal Connection Between the Alleged Misrepresentations and the Death of the Decedents*

"[T]o obtain a recovery for fraud, a claimant must prove, inter alia, that damages were sustained as a proximate cause of the fraudulent conduct. [Citation.]" (*Kruse v. Bank of America* (1988) 202 Cal.App.3d 38, 60.) "Ordinarily, proximate cause is a question of fact . . . [however,] where the facts are such that the only reasonable conclusion is an absence of causation, the question is one of law, not of fact. [Citations.]" (*Weissich v. County of Marin* (1990) 224 Cal.App.3d 1069, 1084.)

"[R]eliance is the causal mechanism of fraud. [Citation.] . . . [¶] '[R]eliance is proved by showing that the defendant's misrepresentation or nondisclosure was "an immediate cause" of the plaintiff's injury-producing conduct. [Citation.] A plaintiff

---

[1] Plaintiffs' brief does not address the other two alleged misrepresentations.

11

may establish that the defendant's misrepresentation is an "immediate cause" of the plaintiff's conduct by showing that in its absence the plaintiff "in all reasonable probability" would not have engaged in the injury-producing conduct.' [Citation.]" (*In re Tobacco II Cases* (2009) 46 Cal.4th 298, 326.)

Here, Plaintiffs contend that the decedents would not have attended USC and would not have been killed if not for the alleged misrepresentations by USC. That decedents relied on the representations is not shown by the second amended complaint, which did not allege that the decedents ever read the representations but only that they "accessed" the website where the statements were posted. Furthermore, the alleged reliance is too remote and vague: plaintiffs do not allege that the decedents would not have ventured into the neighborhoods surrounding USC but for the representations, or that the decedents failed to take safety precautions in reliance on the representations. On these grounds, the trial court did not err in concluding that the complaint did not adequately allege a causal connection between the misrepresentations and the death of the decedents.

4.      *Amendment to the Complaint*

Although the trial court must grant leave to amend if there is "a reasonable probability that the complaint could have been amended to cure the defect," here, plaintiffs did not argue in the trial court, and do not argue now, that they could amend the complaint to cure its defects. (*Sprinkles v. Associated Indemnity Corp.* (2010) 188 Cal.App.4th 69, 75-76.)

12

### *DISPOSITION*

The judgment is affirmed.  Defendant shall recover its costs on appeal.

### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*

CROSKEY, J.

WE CONCUR:

KLEIN, P. J.

ALDRICH, J.